**FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff,**

v.

**MUNICIPALITY OF PONCE, represented by its Mayor, Hon. Jose S. Dapena Thompson, and Paulo Da Cuhna, Defendants.**

Civ. No. 87–1071 (JP).

United States District Court, D. Puerto Rico.

Feb. 28, 1989.

Enrique Banuchi, González, Bennazar & Colorado, Hato Rey, P.R., for plaintiff.

Guillermo de Guzmán Vendrell, San Juan, P.R., Richard A. Lee, Hato Rey, P.R., for defendants.

### OPINION AND ORDER

PIERAS, District Judge.

This is an action brought by the Federal Deposit Insurance Corporation (FDIC), in its corporate capacity, as successor of the Girod Trust Company (Girod), to collect on a loan guarantee executed by defendant Municipality of Ponce. The Municipality has moved for summary judgment on the grounds that the guarantee was made without legal authority and is void.

## I. *Background*

On July 12, 1983, two agreements were executed by Girod Trust Company, Codfish Corporation, and the Municipality of Ponce, the first entitled "Loan Agreement" and the second "Open End Credit," whereby Girod lent to Codfish $500,000.00 and $750,000.00 respectively. Both instruments were signed by Erasto Rodríguez, on behalf of the Municipality, as guarantor.

Codfish's "ship of rich lading wreck'd on the narrow seas;"[1] it defaulted on the loans and eventually filed for bankruptcy. In the meantime, it was "never heard a passion so confus'd, so strange, outrageous, and so variable as [Girod] did utter in the streets. 'My daughter! O my ducats! O my daughter!' "[2]. Girod's daughter ran off with its ducats, and it was declared insolvent and turned over to the FDIC as receiver. The loans at issue in this case were then sold to the FDIC in its corporate capacity.

Prior to the execution of the loan guarantees, the Municipal Assembly of Ponce had passed two ordinances in an effort to improve the city's stagnant economy. The first, Ordinance No. 31 (series 1982–83), approved on September 24, 1982, authorized the creation of the "Ponce Capital Development Fund" and an "Office of Economic Development," subsidiary entities of the Municipality without any separate legal capacity. The Fund was to be operated as a distinct account by an Administrator and funded by certain federal programs and by loans obtained by the Municipality for the purpose.[3]

Later, the Municipal Assembly enacted Ordinance No. 71 (series 1982–83), approved Feb. 18, 1983, which authorized the Mayor to issue loan guarantees to financial institutions, up to the sum of $10 million, whereby the financial institutions would extend loans to Ponce area businesses participating in the city's economic development program. Although the ordinance's first "Whereas" clause makes reference to the Ponce Capital Development Fund, the ordinance fails to state the source of the guarantee funds or to specifically limit them to Fund monies.

On May 12, 1983, Interim Mayor Mario García Granados informed Girod by letter that "the Municipality of Ponce shall guarantee with its own funds, a credit line for One Million Dollars ($1,000,000) which was approved by you to CODFISH Corporation," and on July 12, 1983, the loan guarantee was executed.

At the time the transaction was entered into, the Mayor of Ponce, José G. Tormos Vega, had appointed the Municipal School Director, Erasto Rodríguez, as Acting Mayor. Tormos additionally signed a specific written but undated "Authorization" giving Rodríguez, as Acting Mayor, the authority to represent the Municipality in the transaction at issue. Rodríguez stated in his deposition that Tormos' Secretary told him that Tormos had left instructions for him to be at the offices of Attorney Agustín Díaz García to execute the guarantee, and that Díaz showed him the "Authorization" there. Díaz, counsel for the Municipality, served as the notary for both loan agreements.

Prior to his deposition, Rodríguez stated in an affidavit that he had no recollection of the "Authorization" signed by Tormos, but subsequent thereto he submitted another affidavit confirming his deposition testimony that he had seen the authorization prior to signing the loan guarantee agreements.

Defendant Municipality of Ponce, "sure the Duke will never grant this forfeiture to hold,"[4] contends that under the Municipal Law of Puerto Rico, the Municipality had no authority to guarantee the loans; and that, even if such power existed, the Munic-

---

**1.** Shakespeare, *The Merchant of Venice* III.i.3.

**2.** *Id.,* II.viii. 12–15.

**3.** By Ordinance No. 36 (series 1982–83), approved Nov. 3, 1982, the Municipal Assembly authorized the Mayor of Ponce, José G. Tormos Vega, to borrow ten million dollars from Shear-son–American Express Co. for the Fund. It appears, however, that the loan was never made and that no money was ever specifically put into the Fund.

**4.** *The Merchant of Venice* III.iii.27–28,

ipal Assembly did not authorize the guarantee at issue here. However, the Court, as the Duke, "cannot deny the course of law; For the commodity that strangers have with us in Venice, if it be denied, Will much impeach the justice of the state." [5] We find that the Municipality had the power, and properly exercised it, to guarantee the loans.

## II. *Authority of Municipality*

■ Municipal governments in Puerto Rico, as elsewhere, are governments of limited power. They can exercise only those powers conferred by law. P.R. Const. Art. VI § 1; *Rubert v. Treasurer*, 58 P.R.R. 199, 210 (1941). Any contract entered into in violation of the Municipal law is *ultra vires* and void. 21 L.P.R.A. § 3451(a). The majority of the powers of municipalities were granted by the legislature in the Organic Act of the Municipalities, Act of June 18, 1980, No. 146, 21 L.P.R.A. § 2001 et seq.

In the 1980 act, municipalities were given "full legislative and administrative powers in any matter of a municipal nature." 21 L.P.R.A. § 2051. They have "all the powers that are necessary and convenient to carry out all the duties pertinent to a local government," *Id.* § 2054, including the powers "to develop general welfare programs," § 2054(5); and "to exercise the legislative and administrative power in any matter of a municipal nature which is for the benefit of the population and its development and progress." § 2054(16).

The Court is unaware of any judicial decisions concerning the power of Puerto Rico's municipalities pursuant to these sections to guarantee loans, but the Secretary of Justice of Puerto Rico has spoken twice on the matter.

In his opinion of May 26, 1983, in response to a question about the legal validity of, specifically, the Ponce Capital Development Fund, the Secretary of Justice held that a municipality has the power "to grant or to guarantee loans with public funds to private entities which comply and contribute with the execution of [the 'public pur-

pose of promoting employment and spurring private economic activity in sectors of physical and economic decay of the City of Ponce.']"

In both this opinion and an earlier one, Op.Sec.Just. No. 1976–3, which held under prior law that loan guarantees for the purpose of assisting citizens to purchase houses were not authorized, it was not the broad grant of authority which raised doubts—both opinions apparently concede the grant of sufficient power—but the limitation in Article VI § 9 of the Puerto Rico Constitution that "Public property and funds shall only be disposed of for public purposes, for the support and operation of state institutions, and pursuant to law." The 1976 opinion held that guaranteeing loans to private individuals to construct housing did not constitute a sufficiently public purpose, while the 1983 opinion held that guaranteeing loans to business enterprises that would ease Ponce's economic plight was a public purpose.

This Court agrees with the opinion of the Secretary of Justice both that the powers granted are broad enough to encompass loan guarantees to encourage municipal economic development and that the guarantees to private parties do not contravene P.R. Const. Art. VI § 9.

As to the public purpose, the Supreme Court of Puerto Rico, the ultimate interpreter of the Commonwealth Constitution, stated that "it is possible to appropriate public funds for semipublic or even private institutions that carry out an acknowledged public function." *Puerto Rican Socialist Party (PSP) v. Commonwealth*, 107 D.P. R. 590, 600 (1978). The provision of property and funding to private enterprises for the purpose of industrial development has long been considered a public purpose in Puerto Rico. *See, e.g. Commonwealth v. Fajardo Sugar Co.*, 79 P.R.R. 303, 311–13 (1956). In fact, much of the economic development program in Puerto Rico has been based on publicly backed loans and loan guarantees. *See, e.g.* 23 L.P.R.A. § 273–77 (Industrial Development Co.); *Id.*

---

**5.** *Id.,* III.iii.29–32.

§ 251e(*o*) (Commercial Development Co.); *Id.* § 263d (Fund for Securing Loans to Eligible Businesses). To hold that the Municipality's guarantee of the loan was not for a public purpose and was in violation of the Puerto Rico constitution would be to throw out decades of economic progress as a result of legislation consistently upheld by the Puerto Rico courts. "It must not be; there is no power in Venice that can alter a decree established; 'Twill be recorded for a precedent, and many an error, by the same example, Will rush into the state; It cannot be." [6]

### III. *The Mayor's Authority*

■ The mayor of a municipality has the power, pursuant to 21 L.P.R.A. § 3002(7), "to handle, with the consent of the Municipal Assembly, everything relating to loans." Further, § 3068(8) of the same Title gives the Municipal Assembly the power to "authorize the contracting of loans."

Pursuant to these sections, and to its general powers, 21 L.P.R.A. §§ 2051, 2054, the Municipal Assembly enacted Ordinance 71, which gave the Mayor the authority to issue loan guarantees for economic development. Although the Ordinance refers to the Ponce Capital Development Fund, which was apparently never established as a distinct fund, the Ordinance does not require the involvement of any separate fund. It allows guarantees on the general credit of the Municipality.[7] The Assembly, then, in accordance with the law, gave the Mayor the authority to issue the guarantee.

### IV. *Authority of Rodríguez*

■ The parties agree that Erasto Rodríguez, who signed the loan guaran-

tees, was the Acting Mayor at the time. 21 L.P.R.A. § 3002(3) gives the Mayor the right to appoint a substitute when he is absent. It was pursuant to this provision that Rodríguez was appointed. It appears that an acting mayor pursuant to § 3002(3) can perform any and all of the mayor's functions. Thus, it seems that no further authority would have been needed for Rodríguez to have effectively guaranteed the loans.

However, this Court need not decide the extent of an acting mayor's authority to execute Ordinance 71, since, pursuant to 21 L.P.R.A. § 3002(24),[8] Mayor Tormos delegated the authority for this specific transaction, by way of the written "Authorization," to Rodríguez. While it is true that the authorization is undated, there is no requirement in the statute for a date, just a writing, and moreover Rodríguez stated in his deposition and subsequent affidavit that he was presented with the authorization before signing the documents.

### V. *Conclusion*

In sum, Rodríguez signed the loan documents pursuant to a proper delegation of authority from Mayor Tormos. The Mayor received the authority from Ordinance No. 71, enacted by the Municipal Assembly, which was exercising power granted to it by the Puerto Rico Legislature in conformity with the Constitution. The loan guarantees were proper, and the Municipality may be liable on them. Therefore, summary judgment in favor of defendant Municipality of Ponce is DENIED.

### VI. *Other Pending Matters*

On June 8, 1988, co-defendant Da Cuhna, President of Codfish Corp. and co-guaran-

---

**6.** *Merchant of Venice,* IV.i.214–18.

**7.** The Ordinance, omitting the "Whereas" clauses, reads as follows:
NOW, THEREFORE: The Municipal Assembly of Ponce, Puerto Rico, hereby resolves as follows:
ARTICLE 1: The Mayor of Ponce is authorized to issue guarantees to approved financial institutions in order to create a "pool of funds" in the amount of $10,000,000. to be known as the Economic Development Loan Program (EDLPP); approved financial institutions participating in the EDLP Program will

extend loans to Ponce area businesses participating in the City's Economic Development Program which loans shall be guaranteed by the City from 80% to 100%.
ARTICLE 2: This Resolution shall take effect immediately upon approval.

**8.** 21 L.P.R.A. § 3002(24) provides that the mayor has the power "To delegate, in writing, to any municipal official or employee of the executive branch, the functions and duties vested in him by this Act, except the power to approve, adopt and promulgate rules and regulations."

tor of the loans, filed in this case a "Notice of Opinion and Order Entered by the United States Bankruptcy Court." The Opinion and Order appended thereto granted a preliminary injunction barring the FDIC from further prosecuting this action against Da Cuhna. No notice of the entry of either a permanent injunction or an order vacating the injunction has been filed in this Court.

Therefore, plaintiff is ORDERED to inform this Court as to the status of the aforementioned injunction on or before March 6, 1989. Failure to do so shall result in dismissal of the instant action against defendant Da Cuhna.

If a permanent injunction has been entered, plaintiff shall file a copy and move to dismiss Da Cuhna by March 6, 1989.

A Status Conference is SET for *March 9, 1989, at 3:00 p.m.* The parties are ORDERED to have their principals available by phone under penalty of a fine.

IT IS SO ORDERED.