**FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff, Appellee,**

v.

**MUNICIPALITY OF PONCE, et al., Defendants, Appellants.**

Nos. 89–1958, 89–2013.

United States Court of Appeals, First Circuit.

Heard March 8, 1990.

Decided May 14, 1990.

Juan Rafael González–Muñoz, with whom Bauzá & Dávila, San Juan, P.R., was on brief, for defendants, appellants.

José R. García–Pérez, Hato Rey, P.R., with whom González, Bennazar & Colorado, was on brief, for plaintiff, appellee.

Before TORRUELLA and SELYA, Circuit Judges, and RE,* Judge.

TORRUELLA, Circuit Judge.

This is an action brought by the Federal Deposit Insurance Company ("FDIC") in its corporate capacity, as successor to the now defunct Girod Trust Company ("Girod"). The FDIC seeks to collect on certain guarantees executed by appellant, the Municipality of Ponce ("Municipality") as guarantors of loans and lines of credit to Codfish Corporation ("Codfish") and Rosado and Sons ("Rosado"). The Municipality appeals from the district court's grant of FDIC's cross motion for summary judgment, the denial of its motion for summary judgment and the denial of its certification petition to the Supreme Court of Puerto Rico.

* The Honorable Edward D. Re, Chief Judge of the United States Court of International Trade,

## FACTS

The Municipality of Ponce, Puerto Rico, was a financially booming city until the 1970's. In an attempt to improve the city's stagnant economy, a series of private and governmental efforts were mounted to encourage new businesses and investments during the 1980's. The controversy at issue arises from one of those efforts—guaranteeing loans to job creating industries.

On September 24, 1982, the Municipal Assembly of Ponce approved several ordinances (Ordinance Nos. 23 and 31, series 1982–83) authorizing the creation of the Ponce Capital Development Fund ("Fund") and the Office of Economic Development. On February 18, 1983, the enactment of Ordinance No. 71, series 1982–83, allowed the Mayor of Ponce to issue loan guarantees of up to 10 million dollars to financial institutions that extended loans to Ponce-area businesses participating in the city's economic development program.

In May 1983, while acting Mayor Mario García–Granados negotiated with Girod an agreement to guarantee credit lines, an opinion was requested from the Puerto Rico Secretary of Justice, interpreting the validity of the recently enacted ordinances. After the Secretary's validation of the ordinances, the Municipality went ahead with the program.

On July 12, 1983, two agreements were executed between Girod, the Codfish Corporation and the Municipality of Ponce. The first was a "Loan Agreement" and the second was an "Open End Credit Agreement." Pursuant to these agreements Girod lent Codfish $500,000 and also extended a $750,000 line of credit to said entity. Under the provisions of a third agreement the Municipality signed a "Security Agreement," guaranteeing a $300,000 loan made by Girod to another company, Rosado and Sons. Thereafter, Codfish filed for bankruptcy, Rosado and Sons defaulted on its loan, Girod was declared insolvent, and the loans at issue were sold to the FDIC.

sitting by designation.

On August 14, 1987, the FDIC filed an action for collection of monies from the Municipality of Ponce and its mayor, as guarantors of these loans. The Municipality and the Mayor answered, and filed a motion for summary judgment averring that the guarantees issued by the City and the former Mayor were illegal, null and void *ab initio*, and thus not enforceable by the FDIC. The Municipality alleged that the Mayor and the Municipal Assembly did not have authority to guarantee the loans and that even if such power existed the Municipal Assembly did not authorize the guarantees at issue here. The FDIC opposed the motion and the district court agreeing with the FDIC, denied the motion. In its Opinion of February 28, 1989, 708 F.Supp. 464, the district court stated that the Municipality had the power, and properly guaranteed the loans at issue. As a result of this opinion the FDIC requested leave from the district court to file a motion for summary judgment.

On May 18, 1989, the Municipality filed a Motion requesting Certification to the Supreme Court of Puerto Rico, of the Puerto Rican law issues involved in the lawsuits. Without granting the certification request, the district court granted partial summary judgment in favor of the FDIC on the issue of the validity of the guarantees. The court also ordered additional briefing on the issue whether, under the terms of the contract, proceeding against the debtor or the collateral constituted a condition precedent to the enforcement of the guarantees given by the Municipality.

After the filing of the briefs, the court below granted judgment as requested by the FDIC. It found that the FDIC had complied with the terms of the guarantees agreements. Final judgment was entered in the Rosado case, Appeal No. 89–1958, on August 31, 1989 and in the Codfish case, Appeal No. 89–2013, on September 26, 1989. The notices of appeal were filed. Upon motion filed by appellants, we consolidated the instant appeals for the purpose of briefing and argument.[1]

## DISCUSSION

### I. SUMMARY JUDGMENT

#### A. *Standard of Review*

A motion for summary judgment is appropriate when:

> [T]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). *Brennan v. Hendrigan*, 888 F.2d 189, 191 (1st Cir.1989); *see, e.g., Medina–Muñoz v. R.J. Reynolds*, 896 F.2d 5 (1st Cir.1990). A "genuine" issue is one that is dispositive, and that which consequently must be decided at trial. *Mack v. Great Atlantic and Pacific Tea Co.*, 871 F.2d 179, 181 (1st Cir.1989); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). A "material" fact is one which affects the outcome of the suit and which must be resolved before attending to related legal issues. *Mack v. Great Atlantic and Pacific Tea Co.*, 871 F.2d at 181.

Essentially, Rule 56(e) mandates that summary judgment be entered against a party who fails to establish the existence of an element essential to that party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Thus, the burden is first on the movant, to show "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. at 325, 106 S.Ct. at 2554. Thereafter, the burden shifts to the nonmovant to establish the existence of a genuine material issue. *Brennan v. Hendrigan*, 888 F.2d at 191. The nonmovant, however, cannot rest upon

---

1. On November 9, 1989, the FDIC filed a notice of Cross–Appeal from the judgment entered by the Court below on September 26, 1989 in Civil No. 87–1071 only insofar as the judgment dismisses, without prejudice, the complaint against co-defendant Paolo Da Cunha. We have stayed this cross appeal pending the outcome of Mr. Da Cunha's appeal to the Court below from the lifting of the injunction of proceedings against him by the Bankruptcy Court.

mere allegation or denial of the pleadings. Fed.R.Civ.P. 56.

In the instant case, the district court denied the Municipality's summary judgment request and granted the FDIC's motion for summary judgment, based on the conclusion that, as a matter of law, there was no genuine issue as to a material fact. Upon an examination of the record, it is clear that the district court took appropriate action. We also find that the Municipality failed to properly allege or present any evidence rebutting the FDIC claims, and instead rested upon the allegations made in its answer to the complaint. Thus, for the reasons stated below, we agree with the district court's conclusions.

### 1. Validity of the Ordinances and the Delegation of Authority

On appeal, appellants' main contention is that the district court erred in determining that the Mayor had authority to execute the guarantees at issue, and that such authority was derived from Ordinance No. 71. It argues that the district court examined Ordinance No. 71 in a "vacuum," and that, by so doing, failed to consider the entire picture, which included Ordinances 23 and 31. It contends that, when the ordinances are examined as a whole, they clearly provide that the Development Program was not to be funded from the regular budget, but, instead, from a separately created fund. In the alternative, appellants argue that before committing public municipal funds the Mayor needed special Municipal Assembly approval. We find that the district court properly analyzed the issue, and even went further by considering these ordinances in the context and in relation to the Organic Act of the Municipalities. 21 L.P.R.A. § 2001 *et seq.*[2]

The district court concluded that the Ponce Development Capital Fund Ordinances were enacted pursuant to the general and specific powers entrusted by the Organic Act of the Municipalities. It also

found that, although Ordinance No. 71 refers to a special fund, it does not require a separate budget. Instead, Ordinance 71 clearly allows guarantees to be made on the general credit of the Municipality. The Ordinance reads, in pertinent part:

> ARTICLE I: *The mayor of Ponce is authorized to issue guarantees to approve financial institutions in order to create a "pool of funds"* in the amount of $110,000,000 to be known as the Economic Development Loan Program (EDLP); approved financial institutions participating in the EDLP Program will extend loans to Ponce area businesses participating in the City's Economic Development Program which loans shall be guaranteed by the City from 80% to 100%. (emphasis added).

Thus, the district court held and we agree, that the Assembly, in enacting Ordinance 71, entrusted the Mayor with the authority to issue loan guarantees.

■ The district court further found that a municipal government is one of limited powers, and that it can only exercise those powers conferred by law. P.R. Const. art. VI, § 1; *Rubert v. Treasurer*, 58 P.R.R. 199, 210 (1941). The Puerto Rican legislature has made it clear that municipalities are entitled to "full legislative and administrative powers in any matter of municipal nature," 21 L.P.R.A. § 2051, including "all the powers that are necessary and convenient to carry out all the duties pertinent to a local government," 21 L.P.R.A. § 2054, all powers required "to develop general welfare programs," 21 L.P.R.A. § 2054(5) and "to exercise the legislative and administrative power in any matter of a municipal nature which is for the benefit of the population and its development and progress." 21 L.P.R.A. § 2054(16). We find that the district court properly found that the law authorized the Municipal Assembly to enact the ordinances at issue here.

**2.** The Act provides that the mayor of a municipality has the power "to handle, with the consent of the Municipal Assembly, everything relating to loans." 21 L.P.R.A. § 3002(7). Fur-

thermore, 21 L.P.R.A. § 3068(8) gives the Municipal Assembly the power to "authorize the contracting of loans."

**2. The validity of the loan guarantees**

Appellants further aver that the guarantees are *ultra vires* and void, because they are contracts and at the time of their execution, no special allocation had been made in the municipal budget to satisfy the obligations created by them. *San Miguel v. Municipality of Caguas*, 72 P.R.R. 366 (1951); *González v. Municipality of Las Piedras*, 61 P.R.R. 357 (1942).

The district court determined that *San Miguel* and *González* were inapplicable, because a loan guarantee is not a contract and thus, unlike a contract, does not have a foreseeable time for payment. As such, it more closely resembles a tort payment. District Court Opinion at 3 (May 16, 1989). Although we arrive at the same conclusion as did the district court, we take a different route in reading this conclusion.

■ A loan guarantee or a contract of guarantee is a secondary obligation to a preexisting obligation in which the duty to pay arises when the primary obligation is not satisfied. *See Wong v. Key Finance Corporation*, 266 F.Supp. 149 (D.P.R. 1967). As such, loan guarantees are contracts that are considered contingent liabilities.[3]

By definition, a contingent liability is uncertain and is often highly unlikely to become an actual liability. *See Matter of Xonics Photochemical v. Appeal of Mitsui and Co.*, 841 F.2d 198 (7th Cir.1988). Even if there is no uncertainty as to the amount owed by the guarantor, payment depends upon whether the contingency materializes, *see Matter of Xonics Photochemical*, 841 F.2d at 200, and to this effect, loan guarantees in fact resemble tort payments in that payments are subject to the event of their occurrence.

Moreover, contrary to appellants' contentions, after the original decision in the *San Miguel*[4] case was published, on reconsideration the Supreme Court of Puerto Rico established that the contract in question would not be rendered void because funds were not allocated for it. It determined that in order to be able to collect on this contract, what was relevant was not whether funds were available at the time of payment or whether the contract was specially budgeted, but instead, whether any funds[5] were available in the municipal budget, for this purpose, at the time of the signing. *San Miguel*, 72 P.R.R. at 378–79.

■ In view of this decision as well as the fact that the Organic Act, 21 L.P.R.A. § 3151(b)(2)(C), specifically provides for the budgeting of adverse final judgments, we conclude that as a contingent liability a loan guarantee, like an outstanding lawsuit, falls within this special budget for adverse final judgments. As a result of said budget requirement, we find it proper to conclude that a finding under the *San Miguel* doctrine, as to whether the funds at issue were available is not necessary.

**3. Federal Estoppel**

On appeal, appellants argue that knowledge of all statutory requirements, such as the availability of funds, is imputed on those who enter into contracts with municipal governments. As such, it claims that Mayor Tormos and his acting mayors, by ignoring certain statutory requirements, illegally exceeded their authority. They further contend that Girod had knowledge of this scheme or misrepresentation, and thus, this knowledge is extended to the FDIC, for which reason it cannot collect from the Municipality. Finally, it submits that the laws of Puerto Rico provide that municipal

---

**3.** In fact, loan guarantees have even been omitted from federal budget accounting because of their contingency. Stith, *Rewriting the Fiscal Constitution: The Case of Gramm–Rudman–Hollings*, 76 Calif.L.Rev. 595, 619 (1988). *See also* Note, *The Modified Payoff of Failed Banks: A Settlement Practice to Inject Market Discipline into the Commercial Banking System*, 73 Va.L. Rev. 1349, 1355 n. 35 (1987).

**4.** *San Miguel v. Municipality of Caguas*, 69 P.R.R. 895 (1951).

**5.** The Supreme Court decision reads:
"... un contrato celebrado con un Municipio es *ultra vires* y nulo si al tiempo de la transaccion no hay asignada *suma alguna* en el presupuesto municipal con el objeto de sufragar tal obligacion." (emphasis ours).
"Suma alguna," translates to "any funds."

taxpayers should not be held liable for the ill conceived actions and plans of their leaders. The FDIC avers that the issue at bar is estopped by federal common law. We agree.

■ The federal estoppel claim hinges upon two factors: whether federal law is controlling, and if so, whether the FDIC can claim estoppel. First, we must reiterate that under the circumstances of this case federal law applies. *FDIC v. de Jesús Vélez,* 678 F.2d 371 (1st Cir.1982). Section 1819 of the FDIC Act reads in pertinent part:

> [T]he corporation shall become a body corporate and as such shall have the power ... to sue and be sued ... [and] [a]ll suits of a civil nature at common law or in equity to which the Corporation shall be a party shall be deemed to *arise under the laws of the United States.* (emphasis added).

12 U.S.C. § 1819(a) & (b)(2)(A). Moreover, this court has held that the "arising under" clause, besides providing for jurisdiction, also serves as a reminder that the court should turn to federal common law for guidance. *Santoni v. Federal Deposit Ins. Corp.,* 677 F.2d 174, 178 (1st Cir.1982); *see also Federal Deposit Insurance Corp. v. Blue Rock Shopping Center,* 766 F.2d 744, 747 (3d Cir.1985).

Exemptions to the application of federal law may occur when the FDIC is acting as a receiver, where only the rights of obligors, depositors, creditors and stockholders are involved, or when the federal question is not raised by the parties. By contrast, in the instant case, the FDIC is acting in its corporate capacity, not as a receiver, and the federal issue was raised. Federal law consequently applies. *See, e.g., FDIC v. de Jesús Vélez,* 678 F.2d at 373–74.

■ Second, and more importantly, it is well settled that federal law embodies a policy of protecting the FDIC from misrepresentations and secret agreements which might result in incorrectly assessing the value of holdings for institutions which it acquires in its corporate capacity. *Langley v. FDIC,* 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987); *D'Oench, Duhme v.* *FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942); *FDIC v. P.L.M. Int'l, Inc.,* 834 F.2d 248, 252 (1st Cir.1987).

The federal common law estoppel doctrine expounded in *D'Oench, Duhme,* and recently reiterated in *Langley,* provides that when a party who has lent himself to a scheme or arrangement whereby the banking authority has been misled, "that scheme or arrangement would not be the basis for a defense against the FDIC." *Langley,* 484 U.S. at 92, 108 S.Ct. at 402.

Appellants essentially argue, that the guarantees are void and that there was no misrepresentation since the arrangement was conditioned on the existence of funds in the Municipality's budget and Girod knew about it. The record before us does not support this allegation. The Municipality never presented evidence substantiating this allegation either when it requested summary judgment or when it opposed the FDIC's petition for summary judgment.

Even if this case were to be remanded for a finding as to whether there was a lack of funds at the time of the signing or whether Girod had actual knowledge of the misrepresentation, issues which were not raised below, the result reached would be the same. The Municipality would be estopped from claiming the nullity of the guarantees. It would be estopped because both the Municipal Assembly and the Mayor, by enacting the ordinances and by signing the guarantees without having available funds, lent themselves to the type of "misrepresentations which might result in incorrectly assessing the value of bank holdings for institutions which it insures," *FDIC v. P.L.M. Int'l, Inc.,* 834 F.2d at 252, hence, we find the FDIC was misled. This court has held that the estoppel doctrine applies even where there was no intent to defraud, "rather, the rule prohibits all 'secret agreement[s]' which enable the parties to undermine the federal policy of protecting the FDIC from fraudulent arrangements." *FDIC v. P.L.M. Int'l, Inc.,* 834 F.2d at 253 (quoting *D'Oench Duhme,* 315 U.S. at 447, 62 S.Ct. 676).

Finally, the Municipality seeks to avoid these results by averring that an affirmance would allow mayors to have unbridled power to bind municipalities at the expense of their taxpayers. On appeal, this court's role is limited to a determination of whether the district court properly applied the law. We find it did, and thus we need go no further. Furthermore, by affirming this decision, we do not grant mayors any more power than that which was provided by the electorate, the Municipal Assembly, and the ordinances enacted. It has been held, and we reiterate now under the circumstance of this case and this specific argument, that "[f]or protection against abuses by legislature [or politicians] the people must resort to the polls, not the courts." *Munn v. Illinois*, 94 U.S. 113, 134, 24 L.Ed. 77 (1876).

## II. CERTIFICATION

### A. *Standard of Review*

A denial of a motion requesting the use of the certification procedure "rests in the sound discretion of the federal court." *Lehman Bros. v. Schein*, 416 U.S. 386, 391, 94 S.Ct. 1741, 1744, 40 L.Ed.2d 215 (1974). On appeal, our review is limited to a determination of whether the district court exceeded or abused its discretion. *See Fisher v. Bar Harbor Banking and Trust Co.*, 857 F.2d 4, 7 (1st Cir.1988).

■ We are unaware of any judicial decisions that specifically deal with the power of municipalities to authorize municipal loan guarantees performed for the purpose of industrial or economic development. The Supreme Court of Puerto Rico, however, has held that funding of private enterprises for the purpose of industrial development is considered a public purpose. *See, e.g., Commonwealth v. Fajardo Sugar Co.*, 79 P.R.R. 303, 311–13 (1957). More recently, the Supreme Court of Puerto Rico has held that it is even possible to appropriate public funds for semipublic or even private institutions that carry out an acknowledged public function.[6] *Puerto Ri-*

*can Socialist Party v. Commonwealth*, 107 P.R.Dec. 590, 600 (1978); *see also Marrero v. Municipio de Morovis*, 115 P.R.Dec. 643 (1984) (Upholding the *Socialist Party* decision, and stating that public funds cannot subsidize some political candidates and not others).

Consistent with this precedent, in 1976 the Secretary of Justice of Puerto Rico generally stated that public property and funds shall only be disposed of for public purposes, for the support and operation of state institutions, and pursuant to law. Op.Sec.Just. 1976–3. Moreover, in 1983 the Secretary of Justice, after a request from the Mayor of Ponce, as to the validity of Ponce's development program and the ordinances at issue here, stated that a municipality has the power "to grant or to guarantee loans with public funds to private entities which comply and contribute with the execution of the public purpose of promoting employment, spurring private economic activity in sectors of physical and economic decay of the City of Ponce." Op. Sec.Just. of May 1983. Thus, he found, that the ordinances and the delegation of authorities were valid.

Although opinions of the Attorney General or the Puerto Rican equivalent, the Secretary of Justice, are not binding on the courts, the Supreme Court of the United States has recognized that they are "entitled to careful consideration by the courts, and quite generally regarded as highly persuasive." *Harris County Commissioners Court v. Moore*, 420 U.S. 77 n. 10, 95 S.Ct. 870 n. 10, 43 L.Ed.2d 32 (1974). We feel this may be particularly so when the Secretary's opinions are consistent with the judicial precedent.

In light of the text of the ordinances, which we find clear, the opinion of the Secretary of Justice, and the opinion of the Supreme Court of Puerto Rico, we hold that the district court did not commit an abuse of discretion, and find that this case does not raise the type of questions which

6. The district court stated, that, in fact, many of the economic development programs in Puerto Rico have been based on publicly-backed loans

and loan guarantees. *See* 23 L.P.R.A. §§ 273–77 & § 251e(*o* ).

would require a certification to the Supreme Court of Puerto Rico pursuant to Rule 27, 4 L.P.R.A.App. I–A (1978).[7]

## III. THE COLLATERAL

In reference to the collateral and the Municipality's liability, appellants' argument hinges on two main contentions. Appellants first argue that the agreements executed contained conditional provisions which precluded the action filed before the district court, and second, that by entering into a settlement agreement with Codfish Co. the Municipality is discharged from its liability.

### A. *Conditional Provisions*

■ The Loan Agreement reads in its pertinent parts:

> If the Borrower defaults in the payment of any of the described obligations held by the Lender, the Warranter *jointly and severally* agrees to pay such sums to the Lender, its successors, and assigns on demands, subject to the limitations as to time and amount provided for in this document, *except that this obligation shall be enforceable against the Warranter after proceeding against the Borrower and against the security as collateral held by Lender.* (emphasis added).[8]

The district court determined that in light of Codfish's bankruptcy proceeding, in the instant case, it was not possible to proceed against the borrower in the normal course. The court found that, by becoming a party to the bankruptcy proceedings, its only available forum, the FDIC complied with the covenant of proceeding against the warrantor after proceeding against the lender. We agree.

■ Moreover, not only did the FDIC comply with the above covenant or condi-

tion but the "jointly and severally" clause is construed to mean that the guarantees bind the Municipality *in solido.* *See Crédito y Ahorro Ponceño v. Beiró,* 31 P.R.R. 605 (1923). In the case at bar, the debtor filed for bankruptcy before the suit to enforce the guarantees was filed. As such, the lender or its successor is not required to proceed first against the property of the principal debtor. Instead, the Supreme Court of Puerto Rico has established that the lender may sue the *in solido* guarantor in an independent enforcement action. *Cámara Insular v. Anadón,* 83 P.R.R. 360, 365 (1961) (A creditor, who has filed a bankruptcy proceedings against the principal debtor is not precluded from filing the action of debt against the *in solido* codebtor). *See also* 31 L.P.R.A. § 4892. This is precisely what the FDIC did.

### B. *Settlement Agreement*

■ Appellants claim that the FDIC waived its claim against the Municipality by entering into a bankruptcy settlement agreement with Codfish Corp. The district court concluded that these debts were "joint and several" and that the settlement agreement in no way exonerated the Municipality of Ponce.

In *Union Carbide Corp. v. Newboles,* 686 F.2d 593 (7th Cir.1982), the court concluded that, when the creditor did not receive the full amount of the original debt in the bankruptcy proceeding, the guarantors were liable for the unpaid portion of the original debt. *See also In Re A.H. Robins,* 880 F.2d 694, 702 (4th Cir.1989). Additionally, section 524(e) of the Bankruptcy Code, 11 U.S.C. sec. 524(e), provides that:

> discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt.

---

**7.** (a) This court may take cognizance of any matter certified for it by the Supreme Court of the United States, a Circuit Court of Appeals of the United States, a District Court of the United States, ... whenever it is thus requested by any of said courts, if before the petitioner court there is any judicial matter involving questions of Puerto Rican law which may determine the result thereof, and with regard to which, in the

opinion of the petitioner court, there are no clear precedents in the case law of this Court. 4 L.P.R.A.App. I–A Rule 27(a) (Rules of the Supreme Court of Puerto Rico) (Official Translation).

**8.** The Open End Credit contains essentially the same provisions.

This statute has been interpreted as preserving the liability of a guarantor on the obligations of a debtor whose debts have been discharged in bankruptcy. *United States v. Stribling Flying Service, Inc.*, 734 F.2d 221 (5th Cir.1984); *see In Re A.H. Robins*, 880 F.2d at 702. Thus, the district court properly found that the Municipality was not released from liability by the debtor's discharge.

## CONCLUSION

The district court properly applied the law and did not abuse its discretion, hence, we hereby affirm its conclusions.

*Affirmed.*