**Michael PORTNOY and Mark Tonucci, Plaintiffs,**

v.

**440 FINANCIAL GROUP OF WORCESTER, INC., Larry Renfro and Richard Butt, Defendants.**

**Civil Action No. 94–40086–NMG.**

United States District Court,
D. Massachusetts.

Sept. 24, 1996.

Elizabeth W. Morse, Tashjian, Simsarian & Wickstrom, Worcester, MA, Patrick E. Gonya, Jr., Schatz & Schatz, Ribicoff & Kotin, Hartford, CT, Andrew M. Schatz, Schatz & Nobel, P.C., Hartford, CT, for Michael Portnoy, Mark Tonucci.

Neil Jacobs, Michael J. Moody, Hale & Dorr, Boston, MA, for 440 Financial Group, Larry Renfro.

Neil Jacobs, Michael J. Moody, Hale & Dorr, Boston, MA, Kenneth R. Berman, Sherin & Lodgen, Boston, MA, for Richard Butt.

## MEMORANDUM AND ORDER

GORTON, District Judge.

Pending before this Court are motions by defendants 440 Financial Group ("440") and Larry Renfro for summary judgment on all claims filed against them by plaintiffs, Michael Portnoy and Mark Tonucci. Specifically, 440 has moved to dismiss Counts I through VI, inclusive and Count IX of plaintiffs' Complaint, and Renfro has moved to dismiss Counts IV, VI and IX. Upon review of the briefs, statements of undisputed facts, affidavits and other exhibits submitted by the parties in connection thereto, this Court concludes that there are genuine issues of material fact which preclude the entry of summary judgment with respect to those counts and, therefore, the motions of defendants 440 and Renfro will be denied.

Defendant Richard Butt has also filed a motion for summary judgment on the claims against him, namely, Counts V through IX, inclusive. For the reasons stated below, the motion of defendant Butt will be allowed with respect to Counts VII and VIII, but otherwise denied.

## I. SUMMARY JUDGMENT STANDARD

Summary judgment shall be rendered where the pleadings, discovery on file and affidavits, if any, show "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court must view the entire record in the light most favorable to the plaintiffs, the non-moving party, and indulge all reasonable inferences in their favor. *O'Connor v. Steeves*, 994 F.2d 905, 907 (1st Cir.1993).

The moving party initially bears the burden of showing that "there is an absence of evidence to support the non-moving party's case." *FDIC v. Municipality of Ponce*, 904 F.2d 740, 742 (1st Cir.1990) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)). If the movant satisfies that burden, it shifts to the non-moving party to set forth specific facts to establish the existence of a genuine material issue. *Id.* In deciding whether a

factual dispute is genuine, this Court must determine whether "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *accord Aponte–Santiago v. Lopez–Rivera,* 957 F.2d 40, 41 (1st Cir.1992). The non-movant's assertion of mere allegation or denial of the pleadings is insufficient on its own to establish a genuine issue of material fact. Fed.R.Civ.P. 56(e).

## II. FACTUAL BACKGROUND

*For the purposes of this motion only,* the following relevant facts are recited in the light most favorable to the plaintiffs, the nonmoving party:

1. In 1993, Portnoy and Tonucci were employed as Vice Presidents of the Keystone Group, an organization which, among other things, administered bank proprietary mutual funds.

2. On November 9, 1993, Keystone informed plaintiffs that it had decided to discontinue its business of servicing proprietary mutual funds. Plaintiffs were told that Keystone would continue to employ them until arrangements could be made for the transfer of two clients, Old Kent Bank ("Kent") and Provident Bank ("Provident"). Keystone officials asked the plaintiffs to supervise the transition process and indicated that it would be acceptable for plaintiffs to attempt to establish positions for themselves with the successor administrators.

3. Plaintiffs subsequently contacted 440 and, on November 15, 1993, met with defendant Renfro, the president of 440, and defendant Butt, a member of Renfro's staff. Plaintiffs allege that they entered into a valid and enforceable oral agreement with 440 on that day, pursuant to which plaintiffs agreed to recommend 440 to Kent as one of two proposed finalists for the position of successor administrator ("the November 15 Agreement"). 440 agreed that if it were successful in obtaining that position, it would employ plaintiffs at compensation levels comparable to what they earned at Keystone and pay them an additional commission based upon revenues derived from the Kent Funds. At the conclusion of the meeting, Portnoy asked Renfro if they had a deal, in response to which Renfro shook hands with Portnoy and stated that they had a deal and that the Kent Funds looked like "very good business." Portnoy Dep. at 125.

4. Following the November 15 meeting, plaintiffs met with representatives of Kent who were responsible for screening potential successor administrators. They convinced Kent not to consider certain other potential administrators with whom Kent had already had prior contacts and persuaded Kent to allow plaintiffs to make a subsequent presentation analyzing potential administrators.

5. On November 18, 1993, Portnoy contacted Butt by telephone and informed him of the upcoming presentation, at which time plaintiffs would propose 440 as a finalist. Prior to that telephone conversation, Butt had learned from Renfro that 440 had no intention of complying with the November 15 Agreement. Although there is a dispute between Renfro and Butt as to what the former told the latter with regard to 440's intent, Butt told Portnoy that everything "look[ed] good" and asked that he be kept "informed as to how the process move[d] forward." Portnoy Dep. at 135; Butt.Dep. at 447.

6. At the presentation on November 24, 1993, plaintiffs recommended 440, along with another group, Concord, to be the two finalists for Kent's business. Prior to that day, 440 had not been mentioned in discussions amongst Kent officers about potential successors. After the presentation, Kent selected 440 and Concord as their two finalists and Kent found plaintiffs' presentation to be "helpful". Farley Dep. at 107.

7. After further screening, Kent ultimately chose 440 as the successor administrator for its funds. It was not until February 18, 1994, however, that 440 told plaintiffs that it would not honor the November 15 Agreement. Defendants knew early on that they were not going to honor their Agreement but deliberately refrained from telling plaintiffs until after 440 had successfully won Kent's business. External business difficulties and a false statement made by Butt to Renfro contributed to the decision by 440 to breach

the Agreement. Plaintiffs' Memorandum in Opposition at 15–16.

Based in large part upon the alleged false statement by Butt, plaintiffs' Complaint alleges that defendant Butt tortiously interfered with the contractual relationship (Count VII) and prospective business relationship (Count VIII) that existed between plaintiffs and 440.

## III. DISCUSSION

 Under Massachusetts law, in order to prove that a corporate officer such as Butt interfered with a contract or with business relations between the corporation and a third party, the plaintiffs must show that such officer acted with actual, and not merely implied, malice toward them. *Gram v. Liberty Mutual Ins. Co.*, 384 Mass. 659, 663, 429 N.E.2d 21 (1981). Malice may be shown by proof of facts from which a reasonable inference of malice may be drawn. *Id.* at 664, 429 N.E.2d 21. This Court notes that the "line between a proper inference and unwarranted conjecture is not easily drawn.... [and] depends on the evidence in each case and on what the trier of fact may reasonably infer from that evidence." *Id.* In the summary judgment context, then, plaintiffs must set forth sufficient facts from which a reasonable factfinder would be able to infer that Butt acted with a spiteful, malignant purpose, unrelated to the legitimate corporate interest. *See King v. Driscoll*, 418 Mass. 576, 587, 638 N.E.2d 488 (1994).

 In the instant case, plaintiffs argue that there exists a significant factual basis from which to infer that defendant Butt acted with malice in order to ensure that plaintiffs would not be employed by 440. Specifically, plaintiffs rely upon an allegedly false statement that Butt made to Renfro after 440 obtained Kent's business that Kent personnel "were not pleased with [plaintiffs], and it was not a situation [where] there was a strong relationship" between plaintiffs and Kent. Renfro Dep. at 296. Plaintiffs claim that Butt had never been told of such problems or concerns by Kent personnel. Rather, Butt had merely been told that Kent had no preference as to whether plaintiffs were hired by 440 to service the Kent Funds.

Plaintiffs maintain that the false misrepresentation by Butt was a significant factor in 440's decision not to honor the November 15 Agreement and/or not to continue its business relations with them. Plaintiffs' Memorandum in Opposition at 37.

Plaintiffs further allege that Butt's motive for making such a false statement, and thereby interfering with plaintiffs' contractual and/or business relations with 440, was twofold:

1. Plaintiffs had a wide range of job skills at Keystone and were capable of being flexible to fit the needs of 440. Tonucci Dep. at 69. Plaintiffs' prospective employment by 440 thus presented a threat to Butt's position with the company. Plaintiffs' Memorandum in Opposition at 36.

2. Butt was "irritated" that his boss, Renfro, was willing to pay plaintiffs much more than he had ever paid Butt, despite Butt's longstanding service and loyalty to 440. Butt Dep. at 556–57; Plaintiffs' Memorandum in Opposition at 36.

Plaintiffs therefore allege that Butt's actions were not justified by any legitimate corporate interest and that a reasonable factfinder could infer malice in Butt's actions so as to hold him liable for tortious interference.

Based upon the collective evidence presented by plaintiffs and drawing all reasonable inferences therefrom in the light most favorable to them, this Court concludes that plaintiffs have failed to set forth sufficient facts from which a reasonable jury could infer that Butt acted out of spite, ill will or malignant purpose to ensure that plaintiffs Portnoy and Tonucci were not hired by 440. Plaintiffs have, at best, alleged that they possessed a diverse range of skills that may potentially have overlapped with those of defendant Butt. Plaintiffs have not, however, alleged facts sufficient to prove that Butt's self-interest in job security manifested itself in the form of spite, ill will or malignant, illegitimate purpose. Without more, mere presentation of proof that Butt may have been motivated by "personal gain, including financial gain" is insufficient to show inten-

tional interference with contractual or business relations between plaintiffs and his corporate employer. *King*, 418 Mass. at 587, 638 N.E.2d 488.

Plaintiffs have also alleged that, because Butt was "irritated" with his boss' willingness to pay plaintiffs more than Butt was paid, such irritation somehow affected and motivated his attitude towards the plaintiffs. Plaintiffs have not, however, offered any evidence that Butt's feelings of "irritation" extended to the plaintiffs themselves. Furthermore, even if a jury could infer that Butt resented or disliked plaintiffs, Massachusetts courts have made clear that personal dislike alone will not warrant an inference of the requisite ill will necessary to prove tortious interference. *Id.; Boothby v. Texon, Inc.*, 414 Mass. 468, 487, 608 N.E.2d 1028 (1993). In order for an inference of malice to be established, it must be based upon "probabilities rather than possibilities." *Gram*, 384 Mass. at 664, 429 N.E.2d 21. This Court concludes that plaintiffs have simply failed to make that requisite showing of a probability of malice, spite or ill will, unrelated to any legitimate corporate purpose, on the part of defendant Butt.

Butt's motion for summary judgment is, therefore, ALLOWED with respect to Counts VII and VIII but otherwise DENIED.

### ORDER

For the foregoing reasons:

1. The motion for summary judgment by defendant 440 Financial Group is DENIED;

2. The motion for summary judgment by defendant Larry Renfro is DENIED; and

3. The motion for summary judgment by defendant Richard Butt is ALLOWED with respect to Counts VII and VIII, but otherwise DENIED.

So ordered.