**Paul R. CORREIA and Tammie K. Correia, Debtors.**

**Paul R. Correia and Tammie K. Correia, Plaintiffs–Appellants,**

v.

**Deutsche Bank National Trust Company, as Trustee Under the Pooling and Servicing Agreement Series ITF IN-ABS–2005–A, Defendant–Appellee.**

BAP No. MB 10–064.
Bankruptcy Nos. 07–10280–WCH.
Adversary No. 08–01359–WCH.

United States Bankruptcy Appellate Panel for the First Circuit.

June 30, 2011.

David G. Baker, Esq., on brief for Plaintiffs–Appellants.

Sarah Smegal, Esq. and Howard M. Brown, Esq. on brief for Defendant–Appellee.

Before HAINES, VOTOLATO, and DEASY, United States Bankruptcy Appellate Panel Judges.

PER CURIAM.

Paul R. Correia and Tammie L. Correia (the "Debtors") appeal from the bankruptcy court's decision awarding summary

judgment to Deutsche Bank National Trust Company, as Trustee Under the Pooling and Servicing Agreement Series ITF INABS–2005–A ("Deutsche Bank"). The Debtors had initiated an adversary proceeding seeking to set aside Deutsche Bank's post-petition foreclosure of their home. The bankruptcy court concluded that the Debtors were without standing to challenge Deutsche Bank's compliance with procedures set forth in the contractual arrangement (between and among Deutsche Bank and others, not including the Debtors) governing the transfer of their note and mortgage. We **AFFIRM**.

## BACKGROUND

In 2004, the Debtors executed a promissory note and mortgage in favor of Indy-Mac F.S.B. ("IndyMac") as security for a loan. The documents specifically provided that the Debtors were granting the mortgage to Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for IndyMac, and its successors and assigns. In the definition section, MERS is described as "the mortgagee under this Security Instrument."

Approximately eight months later, Indy-Mac transferred the note, endorsed in blank by a vice president, to Deutsche Bank. MERS continued to hold the mortgage, now for Deutsche Bank's benefit. Subsequently the Debtors' note and mortgage were combined with other notes and mortgages and deposited into a trust titled "Home Equity Mortgage Loan Asset–Backed Trust Series INABS 2005–A" (the "Trust").

The Trust was created under a Pooling and Servicing Agreement dated March 1, 2005 (the "PSA"), and shares were subsequently issued. Under the PSA, Deutsche Bank was appointed the trustee; IndyMac, ABS was defined as the depositor; and IndyMac was the servicing agent for the mortgage. Thus, IndyMac held the note for the benefit of Deutsche Bank as trustee.

The Debtors defaulted on their mortgage in 2006, and filed a petition for relief under Chapter 13 of the Bankruptcy Code[1] on January 17, 2007. Their case was converted briefly to Chapter 7 in March, but was reconverted to Chapter 13 in May 2007. While the case was in Chapter 7, IndyMac filed for, and was granted, relief from the automatic stay to pursue foreclosure.

In August 2007, MERS assigned the Debtors' mortgage to Deutsche Bank. Thereafter, Deutsche Bank proceeded to foreclose upon (and purchase) the property in accordance with Massachusetts law. The Debtors did not, and do not now, challenge the regularity of that process.

After the auction, the Debtors filed a complaint against Deutsche Bank (and IndyMac) to set aside the foreclosure sale. They alleged that the purported assignments from IndyMac to Deutsche Bank were flawed because they did not comply with the terms of the PSA. According to the Debtors, this rendered them invalid.[2] Deutsche Bank countered that, because the Debtors were not parties to the PSA, they lacked standing to assert any of its terms, or the breach thereof, in furtherance of their cause.

---

1. Reference to the "Bankruptcy Code" or the "Code" is to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. § 101, *et seq.* Unless otherwise indicated, references to statutory sections are to sections of the Bankruptcy Code.

2. The Debtors' complaint also asserted that misidentification of the Trust in the underlying documentation nullified the foreclosure. That argument was withdrawn below.

Deutsche Bank moved for summary judgment, arguing that because the assignments of the note were valid, whether they proceeded strictly in accordance with the PSA's terms or not, the foreclosure was valid. It attached an affidavit of a MERS vice president, setting forth the chronology of the assignments and attesting to her signing authority.

The Debtors argued in response that their mortgage had not been assigned in accordance with the PSA, as Deutsche Bank had received it directly from Indy-Mac, rather than from the depositor under the PSA and because the assignment had occurred beyond the PSA's deadline of March 2005. Finally, for the first time, the Debtors asserted that the MERS vice president who executed the assignment was without authority to do so.

In an oral ruling, the bankruptcy court granted Deutsche Bank summary judgment. This appeal ensued.

### *JURISDICTION*

 Before addressing the merits of an appeal, we must determine our jurisdiction, whether or not the issue has been raised by the litigants. *See Boylan v. George E. Bumpus, Jr. Constr. Co. (In re George E. Bumpus, Jr. Constr. Co.),* 226 B.R. 724, 725–26 (1st Cir. BAP 1998). We have the power to hear appeals from "final judgments, orders and decrees or, with leave of the court, from interlocutory orders and decrees." *Fleet Data Processing Corp. v. Branch (In re Bank of New Eng-*

*land Corp.),* 218 B.R. 643, 645 (1st Cir. BAP 1998). "A decision is final if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Id.* at 646 (citations omitted). An order granting summary judgment is a final order where no counts against any defendants remain. *See Segarra Miranda v. Garrido Pagan (In re Garrido Jimenez),* 370 B.R. 878, 880 (1st Cir. BAP 2007).

Here, the bankruptcy court ruled finally in Deutsche Bank's favor. The order is, therefore, final and appealable. Thus, we have jurisdiction. *See id.*[3]

### *STANDARD OF REVIEW*

We review the bankruptcy court's findings of fact for clear error and its conclusions of law *de novo*. *See TI Fed. Credit Union v. DelBonis,* 72 F.3d 921, 928 (1st Cir.1995); *Western Auto Supply Co. v. Savage Arms, Inc. (In re Savage Indus., Inc.),* 43 F.3d 714, 719 n. 8 (1st Cir.1994). A grant of summary judgment, being a declaration that the prevailing party is entitled to judgment as a matter of law, is, therefore, reviewed *de novo*. *See Backlund v. Stanley–Snow (In re Stanley–Snow),* 405 B.R. 11, 17 (1st Cir. BAP 2009).

### *DISCUSSION*

**I. Summary Judgment**[4]

Bankruptcy Rule 7056 incorporates Federal Rule of Civil Procedure 56(c) govern-

---

**3.** We do not reach the question whether the bankruptcy court's jurisdiction was properly invoked to adjudicate the state law anent the foreclosure sale's validity. *Cf. Stern v. Marshall,* — U.S. ——, 131 S.Ct. 2594, 180 L.ed.2d 475 (2011). Here, we can easily resolve the matter on the merits, without considering whether the bankruptcy court's exercise of jurisdiction was constitutional. *U.S. v. Vilches–Navarrete,* 523 F.3d 1, 9 n. 6 (1st

Cir.2008) ("The maxim that courts should not decide constitutional issues when this can be avoided is as old as the Rocky Mountains and embedded in our legal culture for about as long.").

**4.** Fed. R. Bankr.P. 7056 incorporates Fed. R.Civ.P. 56. Pursuant to the Rules Enabling Act, 28 U.S.C. § 2072, on December 1, 2010, Fed.R.Civ.P. 56 was amended. The amended

ing summary judgment. *See* Fed. R. Bankr.P. 7056. The moving party bears the initial burden of demonstrating that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(a); *see also Razzaboni v. Schifano (In re Schifano),* 378 F.3d 60, 66 (1st Cir.2004) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). If the initial burden is met, the burden shifts to the non-moving party to show that genuine issues of material fact exist. *Id.* (citing *F.D.I.C. v. Ponce,* 904 F.2d 740, 742 (1st Cir.1990)). The non-moving party must set forth more than conclusory allegations, improbable inferences or unsupported speculation to establish genuine issues of material fact. Competent evidence is required. *Id.* (citing *Medina–Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990)); *see also Tropigas de Puerto Rico, Inc. v. Certain Underwriters at Lloyd's of London,* 637 F.3d 53, 56 (1st Cir.2011) ("Where ... the nonmovant bears the burden of proof on the dispositive issue, it must point to 'competent evidence' and 'specific facts' to stave off summary judgment."). Although trial courts are enjoined to view the record in the light most favorable to the nonmoving party, "as to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trial worthy issue warrants summary judgment to the moving party." *McCrory v. Spigel (In re Spigel),* 260 F.3d 27, 31 (1st Cir.2001) (quotations and citations omitted).

The gravamen of the Debtors' argument is difficult to discern from their briefing, but appears to focus on two issues: (1) whether the chain of title to the mortgage is compliant with the terms of the PSA; and (2) whether the agent assigning the mortgage to Deutsche Bank on behalf of MERS had the actual authority to do so.

## II. Signing Authority

█ We can dispose of the second argument quickly. The Debtors' complaint asserted two grounds upon which they contended the foreclosure was invalid. The first, based upon an alleged misidentification of the Trust, was expressly withdrawn at the summary judgment hearing. Their second contention was that Deutsche Bank failed to follow the assignment protocols set forth in the PSA. At no point prior to their response to Deutsche Bank's summary judgment motion did they assert that the particular officer who executed the assignment from MERS to Deutsche Bank lacked signing authority. The bankruptcy court could appropriately have ignored the argument altogether. The First Circuit has noted that it is unfair to permit a plaintiff's eleventh hour amendment of a complaint on the eve of summary judgment. *See Brooks v. AIG SunAmerica Life Assur. Co.,* 480 F.3d 579, 589–90 (1st Cir.2007). In this case, the Debtors attempted (though not so carefully as by moving to amend their pleadings) to introduce a new ground for assailing the foreclosure only after they reviewed Deutsche Bank's summary judgment motion. Up to that point, they had attacked the foreclosure on the basis that mortgage assignment was made, but not made in accordance with the PSA. Only in the process of responding to the Deutsche Bank's motion did they assert that, in essence, the assignment of their mortgage was unauthorized. The bankruptcy court briefly,

rule will apply if it is "just and practicable and would not work a manifest injustice ..." *Farmers Ins. Exchange v. RNK, Inc.,* 632 F.3d 777, 782 n. 4 (1st Cir.2011) (explaining the amendments did not change the summary judgment standard or burdens).

and correctly, disposed of the argument. We agree that the Debtors failed to establish a triable issue of fact on the point.[5]

### III. Compliance with the PSA

■ As to the remaining issue, the bankruptcy court concluded that the Debtors lacked standing to challenge the mortgage's chain of title under the PSA. Again, we agree. The Debtors cannot show they were a party to the contract, and, therefore, the record compels the bankruptcy court's conclusion.

■■ Standing is a threshold jurisdictional matter. *See Elkin v. Shkolnikov (In re Shkolnikov)*, 337 B.R. 1, 4 (1 Cir. BAP 2006). The Supreme Court has noted that "standing imports justiciability: whether the plaintiff has made out a 'case or controversy' between himself and the defendant within the meaning of Art. III." *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). This case or controversy must arise between the parties themselves. The court is restrained from hearing cases in which "the litigant [ ] asserts the rights and interests of a third party and not his or her own." *Benjamin v. Aroostook Medical Center, Inc.*, 57 F.3d 101, 104 (1st Cir.1995); *see also Sentinel Trust Co. v. Newcare Health*

*Corp. (In re Newcare Health Corp.)*, 244 B.R. 167, 170 (1st Cir. BAP 2000) ("The burden of alleging facts necessary to establish standing falls upon the party seeking to invoke the jurisdiction of the court.").

The Debtors asked the bankruptcy court to declare the mortgage assignment invalid based upon non-compliance with the provisions of the PSA—a contract to which they were not a party—and to declare the state court foreclosure invalid on that basis. As noted above, the Debtors are not parties, nor have they demonstrated that they were third-party beneficiaries of the PSA's terms. We therefore agree with Judge Feeney's observation in *In re Almeida* where she, faced with a similar case, wrote:

> [The Party] is not a third party beneficiary of the PSA, and, ironically, he would appear to lack standing to object to any breaches of the terms of the PSA. It would appear to this Court that the investors who bought securities based upon the pooled mortgages would be the parties with standing to object to any defects in those mortgages resulting from any failure to abide by the express provisions of the PSA.

*In re Almeida*, 417 B.R. 140, 149 n. 4

---

**5.** The Debtors argued that the assignment of the mortgage from MERS to Deutsche Bank must be invalid under Massachusetts General Laws Chapter 155 as the signor, Ms. Johnson–Seck, was not an officer of MERS at the time. The statute provides that:

> Any recordable instrument purporting to affect an interest in real estate, executed in the name of a corporation by the president or a vice president and the treasurer or an assistant treasurer, who may be one and the same person, shall be binding on the corporation in favor of a purchaser or other person relying in good faith on such instrument.

Mass. Gen. Laws ch. 155, § 8.

To support their position, the Debtors offer a transcript of the MERS vice president's deposition testimony taken in another case. In that deposition, she testified that she was not an officer of MERS, but she did declare that she had signing authority as a vice president of the company. One could easily question whether deposition testimony regarding signing authority in a different case, respecting a different mortgage, at a different time, could effectively rebut the unqualified affidavit submitted in support of the summary judgement motion in the present case. Be that as it may, the cited testimony supports, rather than rebuts, the affiant's position.

(Bankr.D.Mass.2009).[6]

There is no more to say. The Debtors' brief is shot through with other points, none of which were developed below. *See Kunelius v. Town of Stow,* 588 F.3d 1, 19 (1st Cir.2009). We will only note that, although problems in the mortgage market and in the mortgage servicing industry have received wide airing, each case stands alone and must be decided on the merits as developed and presented by the parties to it.

## CONCLUSION

For the reasons set forth above, we **AFFIRM.**

---

**6.** *See also Bittinger v. Wells Fargo Bank NA,* 744 F.Supp.2d 619, 625–26 (S.D.Tex.2010) (finding that obligee under a note did not have standing to sue for breach of contract even though his loan had been bundled into the PSA.); *cf. Livonia Property Holdings, L.L.C. v. 12840–12976 Farmington Road Holdings, L.L.C.,* 717 F.Supp.2d 724, 748 (E.D.Mich.2010) (assigning entities appear to have ratified alleged breaches of the PSA by transferring the original loan documents), *aff'd,* 399 Fed.Appx. 97 (6th Cir.2010).