**ERVA PHARMACEUTICALS, INC., Plaintiff,**

v.

**AMERICAN CYANAMID COMPANY, Defendant.**

**Civ. No. 90–1344 (JP).**

United States District Court, D. Puerto Rico.

Jan. 24, 1991.

Federico Calaf, Reichard & Calaf, San Juan, P.R., for plaintiff.

Jorge L. Guerrero, Hato Rey, P.R., for defendant.

## OPINION AND ORDER

PIERAS, District Judge.

The Court has before it defendant's motion for summary judgment and plaintiff's partial motion for summary judgment. This action arises under the Puerto Rico Trademark Act, 10 L.P.R.A. § 202. Plaintiff seeks damages and injunctive relief for defendant's alleged infringement of its trademark "SUPRA." Defendant American Cyanamid Company ("American"), who removed the case to this Court from the Superior Court of Puerto Rico, has filed a counterclaim based on false designation of origin, trademark infringement, and unfair competition under the Lanham Act and the relevant provisions of the Puerto Rico Civil Code. American also requests damages and injunctive relief for plaintiff's alleged violations.

For the reasons stated below, we deny plaintiff's motion and grant defendant's motion for summary judgment.

## I. BACKGROUND

The plaintiff, Erva Pharmaceuticals, Inc. ("Erva"), is a Puerto Rico corporation, with its offices and principal place of business in Santurce, Puerto Rico. (Initial Scheduling Conference Order, Stipulation # 1 of parties). Plaintiff Erva sells the pharmaceutical product with the trademark "SUPRA", which is manufactured in the continental United States. This product, sold by prescription only, claims to be "A New Concept in Treatment of Erectile Impotence." *See* Exhibit 7 to defendant's Summary Judgment Motion filed July 2, 1990. It contains the active ingredient "Yohimbine Hydrochloride", and according to the insert in the package, "SUPRA" may "have activity as an aphrodisiac." *Id.* The product is manufactured by JMI–Canton Pharmaceutical, Inc., in Canton, Ohio. The plaintiff has registered the trademark "SUPRA" in the Commonwealth of Puerto Rico, (Registration No. 27,551), since January 16, 1987. The date of the first use claimed in the petition for registration is March 26, 1986.

American Cyanamid is a Maine corporation with offices and principal place of business in New Jersey. Defendant American

Cyanamid sells the antibiotic product "SUPRAX," which is used for "pediatric otitis media," or inner ear infections. The product is manufactured by Lederle Laboratories Division of American Cyanamid Company in New York, under license of Fujisawa Pharmaceutical Co., Ltd., a Japanese company. The defendant has registered the trademark for this product and has been the owner of the United States Trademark "SUPRAX" (Registration No. 1,456,-050), since September 8, 1987. The date of the first use claimed in the petition for registration is April 21, 1986. The "SUPRAX" registration in Puerto Rico (Registration No. 29,275), was made on April 10, 1990. The date of the first use claimed in this petition for registration is September 15, 1989. American Cyanamid has been using this trademark in interstate commerce and in Puerto Rico, and its products using this trademark are sold to customers throughout the United States and Puerto Rico. Both the parties have stipulated that neither has consented to nor authorized the other to use its trademark in any way which is confusingly similar to the others' trademark.

## II. SUMMARY JUDGMENT—THE LEGAL STANDARD

A motion for summary judgment is appropriately granted when:

> [T]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c).

A "genuine" issue is one that is dispositive and that must be decided at trial. *FDIC v. Municipality of Ponce*, 904 F.2d 740, 742 (1st Cir.1990). The issue must be decided at trial because the evidence, when viewed in the light most favorable to the nonmovant, would allow a reasonable juror to resolve the issue in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–250, 106 S.Ct.

2505, 2510–2511, 91 L.Ed.2d 202 (1986); *Mack v. Great Atlantic and Pacific Tea Co.*, 871 F.2d 179, 181 (1st Cir.1989). The evidence illuminating the factual controversy cannot be "conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve...." *Mack*, 871 F.2d at 181. A "material" fact is one which affects the outcome of the case and must be resolved before consideration of related legal issues. *Municipality of Ponce*, 904 F.2d at 742.

Therefore, in a summary judgment motion, the burden is on the moving party to demonstrate "an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2254, 91 L.Ed.2d 265 (1986). The nonmovant then bears the burden of establishing the existence of a genuine material issue. *Brennan v. Hendrigan*, 888 F.2d 189, 191 (1st Cir.1989). However, the nonmovant may not rest upon mere allegations or denial of the pleadings; it must respond, by affidavits or other supporting evidence, setting forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e).

### III. TRADEMARK LAW, PRIORITY OF SENIOR USER AND LAWFUL USE IN COMMERCE

From the outset, we note that the trademark and unfair competition law of Puerto Rico is congruous with the common law principles developed by the federal courts. *Rand, Ltd. v. Lazoff Bros., Inc.*, 537 F.Supp. 587 (D. P.R.1982). Chapter 11 of the Annotated Laws of Puerto Rico, 10 L.P.R.A. §§ 191–215, establishes the framework for trademark registration and protection in Puerto Rico. Section 191 of the statute states that the "owners of trademarks used in commerce in Puerto Rico ... may obtain registration of such trademarks by complying with the following requisites...." *Id.* The statute further provides that no trademark shall be registered "which was not lawfully used in Puerto Rico by the applicant or his predecessor prior to the date of filing the application." 10 L.P.R.A. § 194(f) (1978).

Thus, in order to assert protection of the trademark laws, the prior use upon which the trademark registration was based must have been lawful. This is a corollary of the well-settled principle that a trademark right is not acquired by registration, but rather by use; the property right originates in common law by prior appropriation and use. *Keebler Co. v. Rovira Biscuit Corp.*, 624 F.2d 366 (1st Cir. 1980); 4A R. Callman, *The Law of Unfair Competition, Trademarks, and Monopolies* § 25.03 (4th ed. 1983) (citations omitted). Under the common law, the exclusive right to use a trademark belongs to the first who appropriates it and uses it in connection with a particular business. *Armstrong Cork Co. v. Armstrong Plastic Covers Co.*, 434 F.Supp. 860 (E.D.Mo.1977). *See also* 7 J. Kalinowski, *Antitrust Laws and Trade Regulation* § 59.02[3][ii] (citing *Trademark Cases*, 100 U.S. 82, 94, 25 L.Ed. 550 (1879)). However, in order to enforce the trademark rights, the prior use must be lawful. The Puerto Rico statute incorporates this principle as it provides that no trademark shall be registered "which was not lawfully used in Puerto Rico by the applicant or his predecessor prior to the date of filing the application." 10 L.P.R.A. § 194(f) (1978).

The United States Trademark Trial and Appeal Board adopted the "lawful use in commerce" doctrine and has consistently held that the shipment of goods in violation of a federal statute, including the Food, Drug and Cosmetic Act ("FD & C Act"), may not be recognized as the basis for registering a federal trademark. *Clorox Co. v. Armour–Dial, Inc.*, 214 U.S.P.Q. 850 (1982) (citing *In re Stellar International, Inc.*, 159 U.S.P.Q. 48 (T.T.A.B.1968); *Clairol, Inc. v. Holland Hall Products, Inc.*, 165 U.S.P.Q. 214, 218 (T.T.A.B.1970)).[1] In proceedings before the Board where the

**1.** For a history of the evolution of this doctrine from the common law doctrine of "unclean hands," *see generally* Cooper, *Unclean Hands and the Unlawful Use in Commerce: Trademarks Adrift on the Regulatory Tide,* 71 Trademark Rep. 38 (1981).

product of the applicant seeking registration is allegedly marketed or shipped in violation of applicable law, the party challenging the applicant's registration has the burden of proving the facts which compel denial or cancellation of the federal registration. *Kellogg Co. v. New Generation Foods, Inc.*, 6 U.S.P.Q.2d 2045 (1988). The Board has stated that in trying to determine whether the use of a mark is lawful under a certain regulatory act, a use can be held unlawful only when the "issue of compliance has previously been determined (with a finding of non-compliance) by a court or government agency having competent jurisdiction under the statute involved," or where there has been a per se violation of a statute regulating the sale of a party's goods. *Id.* (citing *Satinine Societa v. P.A.B. Produits*, 209 U.S.P.Q. 958 (T.T.A.B.1981)). Because the Supreme Court of Puerto Rico has given persuasive weight to United States jurisprudence on trademark laws, *see Garriga Trading Co., Inc. v. Century Packing Corp.*, 107 D.P.R. 519, 522 (1973), we adopt the Trademark Board's approach in determining "unlawful use" under the applicable provision of the Puerto Rico Code.

 In the instant case, American claims that the plaintiff cannot allege trademark infringement and seek the protection of the trademark laws because it is marketing its product "SUPRA" in violation of certain provisions in the Food, Drug and Cosmetic Act, 21 U.S.C. § 321, *et seq.* (FD & C Act), and the regulations issued pursuant thereto, 21 C.F.R. § 201.10, *et seq.* If the product is being marketed in violation of these laws, plaintiff's use of the trademark is unlawful and cannot be the basis upon which to enforce its rights as trademark owner and senior user of the mark. Therefore, its action must be dismissed. We agree with the defendant.

 In spite of the fact that the product "SUPRA" is only marketed in Puerto Rico, the FDA's jurisdiction under the interstate commerce provision of the FD & C Act extends to "SUPRA" since the product has moved in interstate commerce—the product is manufactured in Ohio and sold in Puerto Rico. *See United States v. Dianovin Pharmaceutical, Inc.*, 475 F.2d 100 (1st Cir.1973), *cert denied*, 414 U.S. 830, 94 S.Ct. 60, 38 L.Ed.2d 65 (1973). Thus, "SUPRA" must comply with the requirements set forth in the FD & C Act and its relevant regulations.

A. The Labeling of "SUPRA"

 The FD & C Act establishes the framework for controlling the marketing and labeling of pharmaceutical products, which are regulated by the FDA. The Act governs the content of the labeling of drugs. Section 331(a) and (b) of Title 21 U.S.C. prohibit "the introduction or delivery for introduction into interstate commerce of any food, drug, device, or cosmetic that is ... misbranded ... [and the] misbranding of any food, drug, device, or cosmetic in interstate commerce...." Section 352 of the statute defines when a drug or device shall be deemed misbranded.

The defendant claims that the plaintiff's product "SUPRA" was misbranded at the time its label was filed with the trademark registration office in Puerto Rico, and is misbranded as it is currently being distributed. As stated earlier, the Puerto Rico trademark statute directs that no trademark registration shall be issued if it has been used unlawfully prior to the date of the registration. Therefore, we will look to the labeling of "SUPRA" when the plaintiff filed its application with the Secretary of State.

American argues that the label as filed with the trademark office violates several provisions of the FD & C Act and several FDA regulations. The first alleged violation is that the established name, yohimbine hydrochloride, does not appear in typesize at least half as large as typesize in which the proprietary name appears, in violation of 21 U.S.C. § 352(e)(1)(B). Plaintiff has accepted that the typesize used for "Yohimbine Chloride" on the label should have been increased in order to be in full compliance with the statute. Plaintiff's Reply to Summary Judgment at 9. Plaintiff has also admitted that the established chemical name does not appear in direct

conjunction with the proprietary name SU-PRA and the relationship between the two is not made clear by use of a phrase such as "brand of" or the use of brackets, as required by 21 C.F.R. § 201.10(g)(1), and that the label does not bear as one of its principal features a statement of identity of the drug yohimbine hydrochloride. It further concedes that the label does not comply with the prominence standards, as required by 21 C.F.R. § 201.50. *Id.* at 9–10.

In 1962, Congress amended the FD & C Act to require the manufacturers of prescription drugs to print the established name of the drug prominently and in type at least half as large as that used for the proprietary name. The Supreme Court has noted that the underlying purpose of this amendment was to bring to the attention of doctors and patients the fact that many of the drugs sold under familiar trade names are actually identical to drugs sold under their "established" or unfamiliar trade names at significantly lower prices. *Abbott Laboratories v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681, 685 (1967). Therefore, we disagree with plaintiff's statement that its admitted violation of FD & C Act and the regulations directly related to the prominence and established name provision of the FD & C Act are "mere labeling deviation[s]" which are not serious enough to violate the statute on its face. Although the "SUPRA" label may contain all the information required under the Act, Congress specifically amended the statute so that the appearance of the label, which may contain the necessary information, be visually designed in a certain way in order to protect consumers (doctors and patients) who may pay more because they do not realize the product they are buying is a well-known drug which they could purchase for a cheaper price. Thus, plaintiff's labeling, as filed with the Puerto Rico Secretary of State when it applied to register for a trademark, failed to comply with these requirements of the statute and clearly violated the statute on its face, insofar as it has directly violated 21 U.S.C. § 352(e) (Supp.1989). Moreover, its admitted violations of the applicable regulations concerning typesize and placement of information, are not *de minimis*, and constitute a sufficient basis, in conjunction with its per se violation of the FD & C Act, upon which to conclude that its use in commerce was unlawful prior to its registering the trademark. *See In re Pepcom Industries, Inc.,* 192 U.S.P.Q. 400, 401 (T.T.A.B.1976) (use of mark is lawful only when product complied with applicable laws and regulations).

## B. Failure to Register

■ The defendant further alleges that plaintiff failed to register as a drug establishment with the FDA when it first used the trademark in 1986, as required by section 510(c) of the Act, 21 U.S.C. § 360(c), and was therefore misbranded under 21 U.S.C. § 352(*o*).[2] According to the defendant, the plaintiff also failed to submit the mandatory drug listing form to FDA until April of 1990, several years after the time of the claimed first use of the trademark "SUPRA" in 1986, in violation of section 510(j) of the statute, 21 U.S.C. § 360(j).

The FD & C Act requires every manufacturer and distributor of a drug product, "upon engaging in the manufacture, preparation, propagation ... of a drug or drugs" to register its establishment with the FDA. 21 U.S.C. § 360(c). This section of the statute further provides that every manufacturer and distributor of a drug produced "shall [on or before December 31 of each year] register with the Secretary his name, places of business, and all such establishments." 21 U.S.C. § 360(b). Also, any such registered person under section 510(b) or (c) shall at the time of registration, file a list of all drugs which are being manufactured, prepared, compounded or processed by him for commercial distribution which have not been included in any list of drugs

---

**2.** This provision of the statute defines a drug as misbranded if "it was manufactured, prepared, propagated, compounded or processed in an establishment in any State not duly registered under section 360 of this title, [or] if it was not included in a list required by section 360(j) of this title...."

filed with the Secretary before such time of registration.

In this case, Erva had failed to register pursuant to section 510(j) of the statute when it filed its application for registration in 1986; it first complied with this statutory requisite of filing a drug listing form for "SUPRA" in April of 1990, four years after its claimed first use of the trademark "SUPRA", and after the initiation of this lawsuit. *See* Plaintiff's Memorandum filed January 9, 1991, Exhibits B. According to section 502(*o*) of the statute then, "SUPRA" is a misbranded drug since it was not included in a list as required by section 360(j). Thus, this per se violation of the FD & C Act constitutes a separate basis upon which we conclude that at the time it registered its trademark in Puerto Rico, plaintiff's product "SUPRA" was not "lawfully used" according to the applicable statute. Plaintiff cannot therefore claim priority of use.

## C. New Drug Status of "SUPRA"

Defendant also claims that there is no approved new drug application ("NDA") for "SUPRA" or for any other product containing yohimbine hydrochloride as its active ingredient. *See* 21 U.S.C. §§ 331(d), 355(a), (b). Because we have decided that plaintiff's mislabeling of its product constitutes a per se violation of the FD & C Act as well as a violation of applicable regulations, thus vitiating its claim of priority of use, we need not address whether plaintiff's product was legally marketed without an NDA issued by the FDA.[3]

## IV. CONCLUSION

Wherefore, in view of the foregoing, defendant's motion for summary judgment is GRANTED, and plaintiff's partial motion for summary judgment is DENIED. Accordingly, plaintiff's complaint is hereby DISMISSED. We note that the defendant is not entitled to cancellation of registered mark; according to Puerto Rico law, in

order to cancel mark, a party claiming to be injured must request cancellation from the Secretary. 10 L.P.R.A. § 200.

Because genuine issues of material fact exist which relate to defendant's counterclaim, these issues shall be tried to the Court on the date scheduled for trial, January 28, 1991.

IT IS SO ORDERED.

---

**3.** The FDA has filed a Motion to Quash the subpoena served on its employee, Mr. Richard Dent. As the Court has decided that the plaintiff's product "SUPRA" has been mislabeled on grounds separate from the issue of the NDA, we deem this motion moot. Moreover, we note that pursuant to 21 C.F.R. § 20.1(b), "Testimony by Food and Drug Administration employees," the Commissioner has not authorized Mr. Dent to give testimony in this case.