**DESSERT BEAUTY, INC., Plaintiff,**

v.

**Mara FOX, Defendant.**

**Mara Fox, Third–Party Plaintiff,**

v.

**Sephora USA, Inc. and Does 1 through 10, Inclusive, Third–Party Defendants.**

**No. 05 Civ. 3872(DC).**

United States District Court,
S.D. New York.

Aug. 6, 2007.

Cowan, Liebowitz & Latman, P.C., by:
Arlana S. Cohen, Esq., Jason D. Sanders,

Esq., New York, NY, for Plaintiff and Third–Party Defendants.

The Duboff Law Group, LLC, by: Leonard D. DuBoff, Esq., Portland, OR, for Defendant and Third–Party Plaintiff.

## *MEMORANDUM DECISION*

CHIN, District Judge.

In this case, Dessert Beauty, Inc. ("DBI") brings suit against Mara Fox, seeking, *inter alia,* a judgment declaring that it is not infringing upon Fox's trademark rights and cancelling Fox's registration for the "Love Potion" trademark.

Fox asserts counterclaims against DBI and third-party claims against Sephora, Inc. for: (1) trademark infringement under both federal and state law, (2) false designation of origin, and (3) interference with prospective economic advantage. DBI and Sephora move for summary judgment on those claims, and further, to cancel the "Love Potion" trademark. For the reasons that follow, summary judgment is granted in part and denied in part.

## *BACKGROUND*

### A. *The Facts*

Construed in the light most favorable to Fox, the nonmoving party, the facts are as follows.

### 1. *Fox's Love Potion Perfumes*

In 1990, Mara Fox began selling the original Love Potion perfume from a retail location in California. (Declaration of Mara Fox ("Fox Decl.") ¶¶ 2–3). Many of her customers were from outside of California, including individuals, stores, and boutiques in almost every state. (*Id.* ¶¶ 3–5).

In 1995, Fox created a website on AOL. com, where she began selling her Love Potion perfume over the Internet. (*Id.*

¶ 6). During this time, Fox began using "Love Potion Perfume" as a business name. (*Id.*). Later, she would also use "Love Potion Magickal Perfumerie" as a business name, and operate a website under the domain name www.lovepotion perfume.com. (*Id.*).

On June 15, 1994, Fox submitted an application to the U.S. Patent and Trademark Office ("USPTO") to register "Love Potion" as a trademark. (*Id.* ¶ 16; Declaration of Susan L. Cohen ("S. Cohen Decl.") ¶¶ 2–3). The registration was issued by the USPTO on July 4, 1995, and bears the Registration Number 1,902,312. (Fox Decl. ¶ 16; S. Cohen Decl. ¶ 3).

Fox personally formulates and manufactures her perfumes, and has developed over 100 formulations of the perfume since she first began selling it in 1990. (Fox Decl. ¶¶ 2, 7). There are currently about 70 varieties of the perfume, and they are all sold under the Love Potion line. (*Id.* ¶ 2).

### 2. *Labeling of Fox's Love Potion Perfumes*

Throughout the course of business, Fox has developed several variations of labels for her products. (*Id.* ¶ 8). The labels are attached to the container, and typically include the name and contents of the product as well as the name and address of the business. (*Id.* ¶ 10). Some labels also contain cautionary information, or miscellaneous information such as statements declaring that the product contains "all natural ingredients." (*Id.;* Beatrice Savocchia Affidavit ("Savocchia Aff.") Exs. 1 & 2). The declaration of ingredients is printed on a separate paper, and is: (1) attached to the vial or bottle by a thin cord or rubber band; (2) bound to the container using a band of jewelry-quality elastic; or

(3) enclosed together with the container in an organza bag. (Fox Decl. ¶ 10).

So, for example, a label for a Love Potion product would include the following information:

Love Potion Magickal Perfumerie *

www.LovePotionPerfume.com

P.O. Box 2835, Toluca Lake, CA 91610 *

(818) 508–6525

Product Ingredients of Perfume Potion Oils:

Fragrance and Essential Oils. May also contain dilutant of either Apricot Kernal Oil or Dipropylene glycol (DPG).

Disclaimer: Love Potion Fragrances are created with the magical properties of the ingredients in mind. The "meanings" of the ingredients are derived from folklore and religions the world over and throughout time. While we create fragrances with intended "purposes", no guarantee of success is granted or implied.

"Warning—The safety of this product has not been determined."

Although we purchase only skin safe ingredients that have been tested and approved by the FDA, our items have not undergone additional testing as finished products.

(Savocchia Aff. Ex. 1).

An individual placing an order for a Love Potion product through Fox's website would typically receive the following: (1) a packing slip for the order; (2) the product in a mesh with an ingredient list; (3) a sample of a different Love Potion product with an ingredient list; and (4) a sheet of "potion ingredients" used in Love Potion products. (*Id.* ¶¶ 3–5). The ingredient list that accompanies the product does not provide the net quantity of the contents. (*Id.* Exs. 1 & 2).

The U.S. Food and Drug Administration (FDA) has not taken any regulatory action against Fox for her labeling practices. (Fox Decl. ¶ 17).

### 3. *DBI's Perfumes*

In or about April 2004, DBI launched a line of fragrance and beauty products under the name "Dessert." (Arlana Cohen Decl. Ex. G, Complaint ("Compl.") ¶ 7; Fox Answer ¶ 7). These products are edible and have different tastes. (Compl. ¶ 8; Fox Answer ¶ 8). The packaging on some of DBI's products include the words "deliciously kissable love potion fragrance" and "deliciously kissable belly button love potion fragrance." (Compl. ¶ 9; Fox Answer ¶ 9). Fox has sent cease and desist letters to DBI demanding that it stop using the phrase "love potion" as part of its descriptive slogans on its packaging. (Defendant–Third Party Plaintiff's Response to Plaintiff's Request to Admit, No. 6).

### B. *Procedural History*

On April 15, 2005, DBI commenced this action against Mara Fox and Love Potion LLC, for: (1) a judgment declaring that DBI did not infringe on Fox's trademark (Complaint ("Compl.") ¶¶ 1, 17–19); (2) cancellation of Fox's "Love Potion" registration (*id.* ¶¶ 20–23); and (3) damages for intentional interference with business relations (*id.* ¶¶ 24–26).

On January 22, 2006, Fox filed a complaint, which asserted claims against DBI and third-party claims against Sephora, D'Lish Fragrances, Randi Shinder, Jessica Simpson, and Does 1 through 10. The complaint alleged: (1) trademark infringement under the Lanham Act (Third–Party Complaint ("TP Compl.") ¶¶ 31–43); (2) false designation of origin under the Lanham Act (*id.* ¶¶ 44–53); (3) trademark infringement under state law (*id.* ¶¶ 54–62); and (4) interference with prospective eco-

nomic advantage (*id.* ¶¶ 63–74). Fox also requested a preliminary and permanent injunction to prohibit further infringement. (*Id.* ¶¶ 75–76).

On July 24, 2006, notices of voluntary dismissal were filed as to Love Potion LLC, D'Lish Fragrances, Randi Shinder, and Jessica Simpson.

DBI and Sephora now move for summary judgment dismissing Fox's claims for trademark infringement under federal and state law, false designation of origin, and interference with prospective economic advantage. They also move for summary judgment cancelling Fox's trademark registration for "Love Potion."

## DISCUSSION

DBI and Sephora rely primarily on the unlawful use defense, arguing that Fox cannot prevail on her claims because of her failure to comply with federal labeling regulations. Accordingly, DBI and Sephora assert that the Court should grant them summary judgment on all of Fox's claims, and should further cancel Fox's trademark registration for "Love Potion."

First, I discuss the standards for summary judgment. Second, I discuss the unlawful use defense and whether DBI and Sephora have successfully asserted the defense. Third, I discuss the remaining claims against DBI and Sephora.

### A. Summary Judgment Standards

The standards governing motions for summary judgment are well-settled. A court may grant summary judgment only where there is no genuine issue of material fact and the moving party is therefore entitled to judgment as a matter of law. *See* Fed R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Accordingly, the court's task is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To create an issue for trial, there must be sufficient evidence in the record to support a jury verdict in the nonmoving party's favor. *See id.*

To defeat a motion for summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348. As the Supreme Court held in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted). The nonmoving party may not rest upon mere conclusory allegations or denials, but must set forth "concrete particulars" showing that a trial is needed. *Nat'l Union Fire Ins. Co. v. Deloach*, 708 F.Supp. 1371, 1379 (S.D.N.Y. 1989) (quoting *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir.1984) (internal quotations omitted)). Accordingly, it is insufficient for a party opposing summary judgment "merely to assert a conclusion without supplying supporting arguments or facts." *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir.1996) (internal quotations omitted).

### B. Unlawful Use

#### 1. Applicable Law

The United States Trademark Trial and Appeal Board has adopted a "lawful use in commerce" doctrine, which provides that the shipment of goods in violation of a federal statute renders a federally registered trademark unenforceable. *See Erva Pharm., Inc. v. American Cyanamid Co.*, 755 F.Supp. 36, 39–40 (D.P.R.1991) (cita-

tions omitted); *Satinine Societa in Nome Collettivo Di S.A. E M. Usellini v. P.A.B. Produits Et Appareils De Beaute,* 209 U.S.P.Q. 958, 963 (Trademark Tr. & App. Bd.1981).

Thus, for example, a party that is in violation of the Food, Drug and Cosmetic Act, 21 U.S.C. § 301 *et seq.* (the "FDCA"), for not complying with federal labeling regulations cannot obtain a federally registered trademark, nor can it maintain or enforce a previously obtained trademark. *Satinine,* 209 U.S.P.Q. at 963 ("shipments in commerce of goods subject to the provisions of the [FDCA] bearing labels or in packages which do not comply with the labeling requirements of that act are 'unlawful' shipments which can afford no basis for obtaining or maintaining a registration"); *see also Clorox Co. v. Armour–Dial, Inc.,* 214 U.S.P.Q. 850, 851 (Trademark Tr. & App. Bd.1982) ("It has been the consistent position of this Board and the policy of the Patent and Trademark Office that a 'use in commerce' means a 'lawful use in commerce', and the shipment of goods in violation of [a] federal statute, including the Food, Drug and Cosmetic Act, may not be recognized as the basis for establishing trademark rights."); *In re Stellar Int'l, Inc.,* 159 U.S.P.Q. 48 (Trademark Tr. & App. Bd.1968).

The unlawful use defense—which has its origins in the common law doctrine of "unclean hands," *see Erva Pharm.,* 755 F.Supp. at 39 n. 1—is therefore a way of preventing the government from having to extend the benefits of trademark protection to a seller who violates that government's laws. *See CreAgri, Inc. v. USANA Health Sci., Inc.,* 474 F.3d 626, 630 (9th Cir.2007).

While the unlawful use defense has long been recognized by the Trademark Trial and Appeal Board, it has not yet been widely adopted by the federal courts. The Ninth Circuit recently applied the defense, and addressed it as an issue of first impression. *Id.* The Tenth Circuit also recognizes the defense. *See United Phosphorus, Ltd. v. Midland Fumigant, Inc.,* 205 F.3d 1219, 1225–26 (10th Cir.2000). The Second Circuit, however, has not addressed the issue.

 Unlawful use will be found where: (1) the issue of compliance has previously been determined (with a finding of non-compliance) by a court or government agency having competent jurisdiction under the statute involved, or (2) where there has been a per se violation of a statute regulating the sale of a party's goods. *See Erva Pharm.,* 755 F.Supp. at 40 (citations omitted). The party alleging unlawful use must prove non-compliance by clear and convincing evidence. *See General Mills Inc. v. Health Valley Foods,* 24 U.S.P.Q.2d 1270, 1274 (Trademark Tr. & App. Bd.1992). In addition, such party must prove that the non-compliance was material, *i.e.,* that it was of such gravity and significance that the usage must be considered unlawful. *Id.*

Because "unlawful use" is an affirmative defense, a party asserting it should generally do so in its pleadings, or, if it neglects to do so, should make an effort to amend its answer to include the defense. *See Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.,* 15 F.Supp.2d 389, 397 (S.D.N.Y.1998), *aff'd,* 192 F.3d 337, 349–50 (2d Cir.1999). Failure to assert the defense in the pleadings will generally result in waiver of the defense. *Id.*

### 2. *Application*

DBI and Sephora argue that they are entitled to summary judgment on Fox's trademark claims because Fox's failure to comply with federal labeling regulations violates the "lawful use in commerce doc-

trine." They also argue that this renders Fox's "Love Potion" trademark invalid.

Fox, on the other hand, counters by arguing that: (1) DBI and Sephora have waived their right to assert the unlawful use defense because they did not include this affirmative defense in their pleadings; and (2) even assuming that the defense has not been waived, it nevertheless fails because she is in compliance with the federal labeling regulations.

First, I address the waiver issue, and conclude that DBI and Sephora may still assert this affirmative defense. Second, I address the merits of the defense.

### a. *Waiver*

In *Lane Capital Mgmt.*, this Court held that "unlawful use" was an affirmative defense, and a party asserting it should do so in its pleadings, or, failing that, should make an effort to amend its answer to include the defense. 15 F.Supp.2d at 397. It then held that the party's failure to do so resulted in waiver of that defense, and refused to allow the defendant to assert it in the first instance at the summary judgment stage. *Id.*

■ Although DBI and Sephora also assert the unlawful use defense for the first time at the summary judgment stage, I nevertheless conclude that they should be able to assert the defense here. First, DBI and Sephora raised the issue as soon as they discovered the alleged violations to the federal labeling regulations. Indeed, they asked for a pre-motion conference as soon as they discovered these facts, in a letter dated March 28, 2007. Moreover, Fox's letter in response, dated March 29, 2007, did not argue waiver. Fox therefore had notice that DBI and Sephora intended to raise this defense, and she did not initially object to the timeliness of it.

■ Second, "[n]otwithstanding a defendant's failure to timely plead [an affirmative defense], a district court may still entertain affirmative defenses at the summary judgment stage in the absence of undue prejudice to the plaintiff, bad faith or dilatory motive on the part of the defendant, futility, or undue delay of the proceedings. In such circumstances, the district court may construe the motion for summary judgment as a motion to amend the defendant's answer." *Saks v. Franklin Covey Co.*, 316 F.3d 337, 350–51 (2d Cir.2003) (internal citations omitted). Here, there is no indication that there is bad faith, or that DBI and Sephora have a dilatory motive. Nor would allowing DBI and Sephora to assert the defense result in undue prejudice to Fox. Accordingly, I construe this summary judgment motion to include a request by DBI and Sephora to amend their answer to assert "unlawful use." I now address the unlawful use defense on the merits.

### b. *Merits*

■ Viewing the evidence submitted by both parties, there remains an issue of material fact as to whether Fox's labeling practices violate the federal regulations. Thus, because a reasonable juror could find that Fox's labeling practices did not violate the federal regulations, I deny DBI's and Sephora's motion for summary judgment based on the unlawful use defense.

As previously stated, unlawful use will be found where: (1) a government agency or court previously found non-compliance, or (2) there is a per se violation of the statute. *See Erva Pharm.*, 755 F.Supp. at 40. There is no evidence as to the former, as the FDA has never brought a regulatory action against Fox for her labeling practices (Fox Decl. ¶ 17), nor has a court previously found such a violation. As to

whether there is a per se violation of the federal labeling regulations, a reasonable factfinder could conclude that (1) Fox has not violated the regulations, and (2) even if there was a violation, the violation was not material.

The FDCA establishes a regulatory framework that controls labeling of pharmaceutical products, including cosmetics. For example, 21 U.S.C. § 331(b) prohibits the misbranding of any food, drug, device, or cosmetic, while § 331(a) prohibits the delivery of any misbranded food, drug, device, or cosmetic into interstate commerce. In addition, the definition of a misbranded cosmetic is provided in 21 U.S.C. § 362.

There are also more specific federal labeling regulations that have been promulgated with respect to cosmetics. Specifically:

(a) "The label on each package of a cosmetic shall bear a declaration of the name of each ingredient in descending order of predominance, except that fragrance or flavor may be listed as fragrance or flavor." 21 C.F.R. § 701.3(a);

(b) "The declaration of ingredients shall appear with such prominence and conspicuousness as to render it likely to be read and understood by ordinary individuals under normal conditions of purchase" 21 C.F.R. § 701.3(b);

(c) "The label of a cosmetic in package form shall specify conspicuously the name and place of business of the manufacturer, packer, or distributor," 21 C.F.R. § 701.12(a), which is the "actual corporate name" of the manufacturer, 21 C.F.R. § 701.12(b), including the street, city, state and zip code, 21 C.F.R. § 701.12(d), and if not actually manufactured by the name of the corporation listed on the label, the label must also state "the connection such person has with such cosmetic; such as 'Manufactured for ____' [or] 'Distributed by ____,' " 21 C.F.R. § 701.12(c); and

(d) "The label of a cosmetic in package form shall bear a declaration of the net quantity of contents ... in terms of fluid measure if the cosmetic is liquid," 21 C.F.R. § 701.13.[1]

According to DBI and Sephora, the labeling on Fox's products: (1) do not list all the ingredients; (2) is not conspicuous; (3) does not identify the actual corporate name of the manufacturer with a complete address; and (4) does not list the net quantity of the contents. (DBI & Sephora Mem. Law at 8).

A review of the evidence submitted, however, shows that a rational factfinder could conclude that Fox's labeling practices comply or substantially comply with respect to the first three. First, when an individual orders a product through the Love Potion website, the product includes an ingredient list that states the ingredients. (Savocchia Aff. ¶¶ 3–5, Exs. 1 & 2). The exception is that fragrance ingredients are identified as "fragrance," but this is allowed under 21 C.F.R. § 701.3(a). (*Id.* Exs. 1 & 2). DBI and Sephora argue that the list is incomplete, but they do not identify the purportedly missing ingredients, and the Court cannot speculate on whether there are, in fact, ingredients missing on that list. *See Satinine,* 209 U.S.P.Q. at 965 ("the proofs submitted by the party charging noncompliance must leave no room for doubt, speculation, surmise, or interpretation").

1. In the case of cosmetics distributed by direct mail, the federal regulations allow for an alternative declaration of ingredients. *See* 21 C.F.R. 701.3(r). It is not necessary to address these alternative requirements because a reasonable juror could find that Fox did not violate the original requirements.

Second, a reasonable juror looking at the list could conclude that the declaration is conspicuous, and is likely to be read and understood by an ordinary person under normal conditions. (*Id.*). This complies with the requirements under § 701.3(b).

Third, the attached list also includes the name and address of Fox's business, *i.e.*, Love Potion Perfume or Fragrances. (*Id.*). A reasonable juror viewing these labels could clearly discern that the product was manufactured for or distributed by Love Potion, as required by 21 C.F.R. § 701.12. (*Id.*). Thus, at a minimum, a reasonable factfinder could find that Fox's labels substantially comply with § 701.12.

The only provision that appears to have been violated is § 701.13 because Fox's labels do not list the net quantity of contents in terms of fluid measurements. (*Id.*). Nonetheless, I still cannot grant summary judgment to DBI and Sephora for "unlawful use" because a reasonable jury could find that the non-compliance is not material.

First, the evidence presented by them is limited in scope, and does not demonstrate that a large portion of Fox's products fail to comply with this provision. Indeed, there is evidence that the product ordered by DBI and Sephora through their attorney is not in compliance, as well as the samples produced through discovery, and some samples provided to the USPTO. (Clarence Erickson Decl. Ex. A; Arlana Cohen Decl. Exs. D & F). That, however, is a small sampling of products that Fox has placed into interstate commerce. To be sure, Fox has been selling her perfumes to out-of-state consumers since 1991, and has sold over 100 varieties of perfume. (Fox Decl. ¶¶ 2, 4–5).

In *CreAgri*, where the Ninth Circuit sustained the unlawful use defense based on mislabeling, it was shown that there was not a single instance of compliance prior to a certain date. 474 F.3d at 633. The non-compliance was therefore significant. Here, however, DBI and Sephora have not offered similarly compelling evidence to demonstrate such significant non-compliance.

Second, and perhaps more importantly, the *General Mills* court drew a distinction between material non-compliance and a violation that was "purely technical in nature," and which "may be relatively harmless and may be subsequently corrected." 24 U.S.P.Q.2d at 1274. Here, the failure to include the net quantity could arguably be one of those violations that are purely technical in nature, and which may be subsequently corrected. As the *General Mills* court stated, "a case by case determination is preferable to a blanket policy of finding every possible technical violation to result in cancellation of a registration, no matter how minor or harmless the violation may be. Such a rigid approach serves the interests of neither justice nor common sense and such an approach is not mandated by the case law on this matter." *Id.* at 1275. I agree.[2] In other words, it may be that cancellation of the registration here would be too harsh a punishment for the violation in question.

Finally, DBI and Sephora continue to argue that Fox fails to show compliance with the regulations. (DBI & Sephora Reply at 1–6). This argument lacks merit, however, because the burden is on DBI and Sephora to show material non-compliance by clear and convincing evidence.

---

**2.** DBI and Sephora also argue that Fox mislabeled her products by providing misleading information, such as asserting, for example, that her products are "magical love attrac-

tant[s]." (DBI & Sephora Mem. Law at 9). Any reasonable juror looking at this would understand that it was mere puffery or an attempt to be cute.

*See General Mills,* 24 U.S.P.Q.2d at 1274. Fox is not required to show compliance where DBI and Sephora have failed in the first instance to show material non-compliance.

Accordingly, summary judgment for DBI and Sephora is denied on the unlawful use defense because there remain issues of fact as to whether actual violations occurred, and because the violations that are presently discernible may not be material. Thus, I also reject their request to cancel Fox's registration based on unlawful use.

In sum, DBI and Sephora rely on the unlawful use defense with respect to Fox's claims for federal trademark infringement (DBI & Sephora Mem. Law at 4–11), false designation of origin (*id.* at 11), and state trademark infringement[3] (*id.* at 11–12). As a result, summary judgment is denied on all of these claims. The only remaining issue, then, is Fox's claim for tortious interference with prospective economic advantage.

---

**3.** There appears to be some confusion with respect to Fox's state trademark infringement claim. (TP Compl. ¶¶ 54–62). DBI and Sephora originally construed it as a statutory claim under California law (DBI & Sephora Mem. Law at 11–12), but Fox argues that she is asserting a state common law claim (Fox Opp. at 17–18). I construe the claim in favor of Fox, *i.e.,* as a state common law claim, because she is the third-party plaintiff as well as the non-movant. The title of the claim in the third-party complaint also says "Third Claim for Damages for State Common Law Trademark Infringement." (TP Compl. ¶ 54).

As a result, DBI and Sephora argue in their reply that the state common law trademark infringement claim should be dismissed under the unlawful use defense because the legal framework used to analyze state common law trademark claims is the same one used for federal trademark infringement claims under the Lanham Act. (DBI & Sephora Reply at 13–14). Because I did not sustain the unlawful use defense, I also deny summary judgment for DBI and Sephora on the state trademark infringement claim.

## C. Tortious Interference With Prospective Economic Advantage

### 1. Applicable Law

 Under California law,[4] a claim for tortious interference with prospective economic advantage requires that plaintiff allege: (1) an economic relationship between plaintiff and some third party, with the probability of future economic benefit to plaintiff; (2) defendant's knowledge of the relationship; (3) intentional wrongful acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to plaintiff proximately caused by the defendant's acts. *See Korea Supply Co. v. Lockheed Martin Corp.,* 29 Cal.4th 1134, 1153–54, 131 Cal.Rptr.2d 29, 63 P.3d 937 (2003) (citations omitted).

 In addition, a plaintiff must also plead that defendant engaged in an independently wrongful act. *Id.* at 1158, 131

---

**4.** I apply California law because both sides apply California law, and because the most significant contacts, including Fox's business, are all in California. Thus, California appears to have the most significant interest here. *See Krock v. Lipsay,* 97 F.3d 640, 645 (2d Cir.1996) (New York applies an "interest analysis" to identify the state that has the "greatest interest" in the litigation).

Fox also asserts that her tortious interference claim "is not limited to California but applies to all states in which she has used the Love Potion mark in commerce, which is nearly every state." (Fox Opp. at 19). If Fox is suggesting that she has tortious interference claims under the law of every state, then she is mistaken. That simply makes no sense. Fox may indeed assert a tortious interference claim that will take into account the conduct of DBI and Sephora in other states, but with respect to the applicable law for her tortious interference claim, only the law of one state applies—and that is California law.

Cal.Rptr.2d 29, 63 P.3d 937 (citing *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal.4th 376, 393, 45 Cal.Rptr.2d 436, 902 P.2d 740). "[A]n act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Id.* at 1159, 131 Cal.Rptr.2d 29, 63 P.3d 937.

### 2. *Application*

Here, DBI and Sephora assert that Fox's tortious interference claim fails because she does not present any evidence that they committed an independently wrongful act. (DBI & Sephora Mem. Law at 12–13; DBI & Sephora Reply at 14–15).

Fox, on the other hand, argues that DBI and Sephora engaged in the unfair business practice of keyword advertising and metadata coding, which lured away customers attempting to find her website. (Fox Opp. at 18; TP Compl. ¶ 26).

■ Summary judgment is granted for DBI and Sephora on this claim. First, Fox presents no evidence that DBI and Sephora engaged in such practices. Fox argues that this is due to discovery abuse on the part of DBI and Sephora, but I had already addressed this issue previously when I ordered DBI and Sephora to produce all responsive documents. (*See* Order, February 22, 2007). Nevertheless, Fox has failed to adduce any evidence to support this claim. Thus, a reasonable juror looking at the evidence could not rule in her favor.

Second, even assuming she did present some evidence in support, Fox's tortious interference claim still fails because she does not explain or identify how keyword advertising or metadata coding are unlawful in the context here, *i.e.*, how they can be considered independently wrongful acts. Accordingly, this claim is dismissed.

### *CONCLUSION*

For the reasons set forth above, DBI's and Sephora's motion for summary judgment is granted in part and denied in part. The motion is denied as to Fox's federal and state trademark infringement claims, as well as her false designation of origin claims. I also refuse to cancel her registration of the Love Potion mark. The motion is granted with respect to the tortious interference with economic advantage claim.

A pretrial conference will be held on August 24, 2007, at 10:00 a.m. at 500 Pearl Street, New York, New York 10007, Courtroom 11A.

SO ORDERED.